## Hackendorn Contracting Co. for use *v.* Johnstown City, Appellant.

*Contract—Municipal contract—Failure of contractor to perform —Payment of contractor's workmen to secure completion—Case for jury.*

1. Where a municipal construction contract provides that if the work should be abandoned, the city might complete the work, use the materials upon the ground and charge the expense of completion to the contractor, the city, on the abandonment of the work by the contractor, may pay the contractor's laborers their back wages, and charge the same to the contractor, if it appears that, to secure the work already done against immediate danger, the operation had to be continued, and that general scarcity of labor required the continuance of the same workmen who had refused to continue on the job unless their wages were paid.

2. In such case, it is for the jury and not the court to determine whether; under the contract and the conditions which existed when the work was abandoned, other competent labor could or could not have been procured in time to safeguard the undertaking.

Argued October 2, 1923. Appeal, No. 78, Oct. T., 1923, by defendant, from judgment of C. P. Cambria Co., Sept. T., 1919, No. 215, for plaintiff n. o. v., in case of

Hackendorn Contracting Co. for use of National Bank of Johnstown v. City of Johnstown.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Reversed.

Assumpsit for balance alleged to be due on construction contract.   Before EVANS, P. J.

The opinion of the Supreme Court states the facts.

The provisions of the contracts for the construction of two bridges were as follows respectively:

As to one: "Should the work at any time be abandoned or the contractor fail to comply with the clauses governing the time of commencement and completion, or otherwise wilfully violate any of the conditions of this contract, then the City......may proceed, as occasion demands, to secure a completion of the work by contract or otherwise and charge the cost of the same to the contractor, and shall have the right and power to make free use of all material, machinery, implements and tools that may be found upon the work, or to provide such as are necessary for the completion of the work."

As to the other: "The council of the City of Johnstown, shall have full authority and power to immediately purchase and hire the materials, tools, labor and machinery necessary for the proper completion of the contract, and to charge the expense thereof to the contractor or his surety; or both; which expense shall be deducted from any moneys due the contractor under this contract."

Verdict for plaintiff for $3,508.08.   Judgment n. o. v. for plaintiff for $6,395.84.   Before EVANS, P. J., McCANN, J., and REED, P. J., of Orphans' Court, specially presiding.   Defendant appealed.

*Error assigned* was judgment n. o. v., quoting record.

*H. S. Endsley,* with him *Tillman K. Saylor,* City Solicitor, for appellant.—Where a builder defaults, as in

failing to complete the work within the time specified without a sufficient excuse therefor, or in unjustifiably abandoning the work before completion, the owner may generally take possession of the work and complete it himself or employ another so to do and charge the builder with the necessary expense thereof: Halferty v. Marsch, 252 Pa. 137.

*Harry Doerr,* with him *M. D. Kittell* and *Philip N. Shettig,* for appellee.

Opinion by Mr. Justice Schaffer, January 7, 1924:

The City of Johnstown appeals from a judgment entered against it non obstante veredicto.

The plaintiff contracted with defendant for the construction of two bridges and, failing to complete them within the time stipulated therefor, quit the work, which was finished by the municipality. The contracts contained provisions applicable in the event of abandonment of the work, appearing in the reporter's statement of the facts. The contractor ceased work in the month of January, 1918, during severe weather and when there were ice gorges above the bridges. Under one of them, the bridge structures and false work had been constructed but the concrete had not been poured. Unless it be poured promptly and have time to set, there was grave danger that the false work and other parts of the structure then in place, upon which $24,000 had already been expended, would be carried away. The ice gorges did break twelve days after the city had completed the pouring of the concrete and swept away all the false work, but as the concrete had set, no damage was done to the bridge.

When the city took over the job, laborers employed on the bridges had not been paid by the contractor the amounts due them, aggregating $2,887.76. Officials of the city testified these men refused to continue working on the bridges unless their back wages were paid, and

that, owing to the scarcity of labor at the time, due to the world war, particularly such as had the requisite skill to promptly and successfully complete the bridges, it was impossible for the city to secure other labor for the completion of the work. Faced with this grave emergency, the city paid the men the wages due them by the contractor and they thereupon resumed work in the city's behalf and the bridges were completed before the threatened danger became a reality. On completion of the work by the municipality, there was a balance due the contractor after paying all charges, including the arrears of the laborers, of $3,508.08. The contractor brought suit for this sum and for the amount paid the laborers on their back wages, alleging that, under the contracts, the city had no right to make these payments or to deduct them from the contract price.

On the trial the court submitted to the jury the question whether it was necessary for the city to pay the wages due the contractor's employees at the time of abandonment in order that the bridges might be promptly and expeditiously completed and that a possible loss on account of floods be avoided. The jury found this question in favor of the city and a verdict in plaintiff's behalf for but $3,508.08, with interest. The court on a motion for judgment notwithstanding the verdict entered it for the contracting company to the use of the bank, to which the latter had assigned its claim, for the full amount claimed, holding that as the contract did not provide that the city might pay obligations incurred to the contractor's workmen prior to the abandonment of the undertaking, the municipality could not make these payments and deduct them from the amount due the contractor or its assignee. With this conclusion, we cannot agree, as in our opinion the terms of the contract were sufficiently broad, in view of the emergency and labor conditions and of the default of the contractor, to warrant the payments being made, if in the opinion of the jury other competent labor could not have been

procured in time to safeguard the undertaking and insure against loss by the threatened danger.

No decision bearing closely on the question we are determining has been brought to our attention by counsel on either side nor has our own research developed one, but we think Halferty v. Marsch, 252 Pa. 137 (1916), aids in the solution of the problem. There, where a subcontractor, engaged in the building of a railroad, abandoned the work, it was held that it was for a jury's determination whether as part of the cost of completion the main contractor could charge, against a balance due the subcontractor, a proportionate part of the salaries of the former's superintendent and assistant superintendent, who devoted time to the direction of the work. In Ludowici Caladon Co. v. Independent School District of Independence, 169 Iowa 669, 149 N. W. 845 (1914), where the contractor quit work on a school building and the bondsmen refused to finish it and the school district completed it, it was said "[the] owner was entitled to the benefit of its bargain and to have the building completed at no greater cost to it than the contract price. ......The right to complete the building under such conditions cannot be made to depend upon a provision of the contract authorizing such to be done, but rests upon the elemental ground that a party to a contract not broken through his fault is entitled to its benefits; and when an expenditure of money is necessary to protect and complete that which is already in his possession, as a result of part performance, such expenditure may be made and recovery had for it." In Smith Sand and Gravel Co. v. Corbin, 102 Wash. 306, 173 Pac. 16, the work of excavating rock did not proceed with desired diligence and the owner told the contractor to quit work. He made another contract at the same price with a third party. After working a short time, and finding that he was losing money, this third party threatened to quit work. To get him to continue with the work, the owner made a second contract with him promising to pay him

the actual cost thereof. The owner was allowed to recover this additional amount from the first contractor as damages for his failure to complete the excavation in accord with his contract.

Concluding, as we do, that the question whether the moneys paid for arrears of wages constituted part of the necessary expense of completing the work was for the jury under the circumstances disclosed by the record, it was error for the court to enter judgment for the plaintiff for the amount so paid.

The judgment is reversed and set aside so far as the sum of $2,887.76 included therein is concerned and is here entered in favor of the plaintiff and against the defendant on the verdict of the jury.