TOWNSHIP OF SPRINGWELLS v. DETROIT, PLYMOUTH & NORTHVILLE RAILWAY.

STIPULATED DAMAGES — PENALTY — BOND — FRANCHISE — STREET RAILROAD.

> The penalty of a bond given by a street-railroad company to secure performance of the duties enjoined by a franchise accepted by it will be construed as fixing in advance the damages recoverable for a breach and not as providing a mere penalty.

Error to Wayne; Frazer, J. Submitted February 14, 1905. (Docket No. 143.) Decided May 22, 1905.

Assumpsit by the township of Springwells against the Detroit, Plymouth & Northville Railway, principal, and the American Bonding & Trust Company, surety, on a bond. There was judgment for plaintiff on a verdict directed by the court, and defendants bring error. Affirmed.

*Dickinson, Stevenson, Cullen, Warren & Butzel,* for appellant American Bonding & Trust Co.

*R. I. Lawson* and *Tarsney & Fitzpatrick,* for appellee.

BLAIR, J. The Detroit, Plymouth & Northville Railway about May 15, 1901, obtained from the township of Springwells a franchise for the construction and operation of a line of street railway along Warren avenue from the then northerly limits of the city of Detroit to the then westerly line of plaintiff township. Among the terms and conditions of the resolution by the township board of Springwells granting permission to the defendant railway to construct a street railway on Warren avenue it was provided that the track should be laid to a gauge of 4 feet

8½ inches, composed of T rails of a weight of 60 pounds to a lineal yard; that the location of the track should be upon the side of the highway; that a map of the proposed railroad should be filed with the township clerk and approved by the board; that at all highway crossings, etc., crossings of the track should be made of plank, and should be of certain width; that at each corner a group of lights should be maintained; that the railroad should be completed and in operation within 120 days after the acceptance of the grant herein contained, etc.; and it was also provided that—

"Within sixty days after acceptance the grantee herein shall file with the township clerk of the township of Springwells a good and sufficient bond in the sum of $10,000, conditioned upon the carrying out of all the terms of this resolution relative to the construction of the line of railway herein licensed, and when the said terms are fully carried out the township board hereby agree to discharge the said bond."

In compliance with this resolution the defendant railway company and the American Bonding & Trust Company, about July 15, 1901, executed a bond, conditioned that—

"If the said first party (Detroit, Plymouth & Northville Railway) shall well and truly perform all the obligations required of it in the said grant to it heretofore made as aforesaid, then this obligation shall be null and void; otherwise it shall be of full force and virtue."

No portion of the railroad was ever constructed, and the action was brought in assumpsit to recover the sum of $10,000, the amount named in the bond running from defendant to plaintiff township. The trial judge directed a verdict for the plaintiff in the sum of $10,000 and $1,280.55 interest, and to review the judgment entered upon this verdict the defendants have removed the record to this court by writ of error.

The sole question for determination in this case is whether the provision in the bond for the payment of

$10,000 on default is in the nature of a penalty or constituted a fixing in advance of liquidated damages. Defendants contend that the provision in question is for a penalty, in accordance with the rule adopted by this court in *Jaquith* v. *Hudson*, 5 Mich. 123, that:

" Where the contract is for the performance of several stipulations of very different degrees of importance, and one large sum is made payable on the breach of any one. of them, even the most trivial, the damages for which can, in no reasonable probability, amount to that sum, * * * as the contract exacts the same large sum for the breach of a trivial or comparatively unimportant stipulation as for that of the most important, or of all of them together, it is equally clear that the parties have wholly departed from the idea of just compensation, and attempted to fix a rule of damages which the law will not recognize or enforce."

This rule is based upon the " principle of just compensation for the loss or injury actually sustained. * * * It is the application in a court of law of that principle long recognized in courts of equity, which, disregarding the penalty of the bond, gives only the damages actually sustained. This principle may be stated in other words to be that courts of justice will not recognize or enforce a contract or any stipulation of a contract clearly unjust and unconscionable." This rule of construction is wise and salutary as applied to contracts between private parties, and has frequently been approved by this court. But as to contracts between municipalities acting in their governmental capacities and public service corporations, where the contracts are affected by a public interest, the application of the rule must obviously be modified by the widely different status of the parties. In cases like that at bar the municipality cannot suffer any damages in its private or corporate capacity, and must be deemed to be contracting for the benefit of the public. As said by Mr. Justice Montgomery, speaking for the court, in *City of Detroit* v. *Telephone Co.*, 135 Mich. 696:

" On the argument, attention of counsel was directed to the case of *Whiting* v. *Village of New Baltimore*, 127 Mich. 66. We are unable to distinguish that case from the present. In that case, as in this, the municipal body, as such, suffered no damages by reason of the failure of the corporation to comply with the terms of its grant. But it was said that the contract was made by the corporate officers for and in the interest of the inhabitants. It might be added that their damages, likewise, would not be susceptible of proof, and this furnishes a strong reason for holding that the parties intended by their stipulation to treat such damages as liquidated."

To hold that the parties in this case provided for a penalty, as contended by defendants, is to determine that they were at much pains to do an entirely idle and profitless thing. Such a construction ought not to be given to the agreement of the parties, if any other reasonable one is open to the court. The construction of a line of railway was the prominent thing in the minds of the parties. The weight of the rails, the gauge, the planking at crossings, and other details of construction, were merely the elements which were descriptive of and went to make up the completed whole. The bond in suit was intended to enforce a substantial performance of the contract for the benefit of the inhabitants of Springwells, and for that purpose provided for damages in default of such performance. The status of the parties, and the fact that otherwise no damages would be ascertainable, warrant the construction that the parties intended the provision for $10,000 as liquidated damages for a substantial failure to perform the entire contract, rather than as a penalty to secure the exact performance of each separate provision for construction.

The case of *Whiting* v. *Village of New Baltimore*, supra, supports, and, we think, requires, this holding. In that case the ordinance required the electric-railway company to deposit a certified check for $2,000, "which said check shall be returned to said grantee, or to his order, upon the completion of said railway within the time herein provided for, and in case of a default of the con-

struction of said road within the time provided shall be collected, and the proceeds thereof placed in the village treasury," etc.   "Said grantee shall fully construct said railway and equip the same with cars, and shall commence the operation of said railway by the regular running of cars thereon on or before the 30th day of November, A. D. 1897," etc.   In deciding the case in the court below, Judge Atkinson, in a very able and elaborate opinion, said, referring to the sections of the ordinance above quoted as sections 14 and 15:

"I think sections 14 and 15 should be transposed, and section 15 read first, which by its terms provided that the grantee 'shall fully construct said railway and equip the same with cars, and shall commence the operation of said railway by the regular running of cars thereon on or before the 30th day of November, A. D. 1897.'   The defendant's right to retain the two thousand dollars ($2,000) rests upon what is meant by the word 'construction' in section 14; and if we read these two sections together in the transposed order I think that word means the performance of all that is required in section 15, viz., the actual building of the road, putting down rails, ties, planking, grading, paving, etc., including the erection of poles, stringing of wires, and the actual equipment of the road by cars and motors as stipulated in the ordinance; so that in this view Mr. Dyar would forfeit the ($2,000) two thousand dollars in case of default in any one of seven or eight important conditions, and that he would not be entitled to the return of his draft on the simple completion of a roadbed through the village with no connections either way, or no other compliance with the ordinance.   If this reasoning is correct, there is a multiplicity of covenants and but one measure of damages—a test which is often applied by courts in order to ascertain whether the amount is 'liquidated damages' or 'a penalty'"—citing *Jaquith* v. *Hudson,* 5 Mich. 123, and other cases.

Judgment was entered for the plaintiff for the reasons stated, which was reversed in this court upon the ground that the case came within that section of the rule as laid down in *Jaquith* v. *Hudson:*

"Where, from the nature of the contract and the subject-

matter of the stipulation for the breach of which the sum is provided, it is apparent to the court that the actual damages for a breach are uncertain in their nature, difficult to be ascertained, or impossible to be estimated with certainty by reference to any pecuniary standard," etc.; and the court therefore " adopts the computation or estimate of the damages made by the parties as being the best and most certain mode of ascertaining the actual damage or what sum will amount to a just compensation."

There is no valid ground for distinguishing the *New Baltimore Case* from the case at bar, and the judgment is affirmed.

Carpenter, Montgomery, Ostrander, and Hooker, JJ., concurred.