(118 App. Div. 665)

NATIONAL CONTRACTING CO. v. HUDSON RIVER WATER POWER CO.

(Supreme Court, Appellate Division, First Department.   April 5, 1907.)

1. DAMAGES—BREACH OF CONTRACT.

   Where a contractor, without cause abandoned the work before completing it, the owner's measure of damages was the difference between what he would have had to pay to the contractor if he had performed and the actual cost of completing the work, provided the same was reasonable, and provided the contract contained no stipulation fixing the measure of damages.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 306–308.]

2. SAME—PROVISIONS OF CONTRACT.

   A stipulation, in a contract for the construction of a dam and power plant on a river, that the contractor agrees that if the work "shall be abandoned, or if at any time the engineer shall be of the opinion,. and shall so certify in writing" to the owner, that the work is unreasonably delayed, or if the contractor shall violate the conditions of the contract, or if he shall not be executing the contract in good faith, he will make certain compensation to the owner, is not applicable where the contractor totally abandons the contract and takes away his tools, without having been ordered to quit on notice from the owner, and the owner himself completes the work.

   103 N.Y.S.—41

3. APPEAL—QUESTIONS REVIEWABLE.

Where, in an action for breach of a contract, the point that a stipulation in the contract fixed the measure of damages was not raised in the court below, it was too late to raise the point for the first time on appeal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, §§ 1018, 1035.]

4. DAMAGES—BREACH OF CONTRACT.

A contractor for the construction of a dam and power plant on the river abandoned the work before completing it. The owner proceeded to complete the work, and excavated about 53,000 cubic yards of earth. The cost of this work, if done by the contractor, would have been about $16,-000. The reasonable cost of the work, as shown by experts, was 15 cents more per cubic yard than the contract price. The actual cost to the owner was a large sum, but it was not shown that such cost was reasonable. *Held*, that the owner should not be allowed in this item an increased cost above the reasonable cost for the work as shown by the experts.

5. SAME.

A contractor for the construction of a dam and power plant on a river abandoned the work before completing it. The owner proceeded to complete the same. The contract for the work did not provide for a lump sum, but for a unit price for each class of work required. The owner, in proving damages, showed the cost to him in doing specified items, without showing anything with reference to the other work required. *Held*, that the owner was not entitled to recover the amount shown by his evidence for the other work might have been done at a lower price than that which it had promised to pay to the contractor, entitling the latter to a credit therefor.

6. SAME.

A contractor for the construction of a dam and power plant on a river abandoned the work before completing it. The contract provided that the plans might be altered and the kinds and quantities of work increased and diminished. The owner completed the work, and showed his damages sustained for doing specified classes of work. The contractor showed its estimated profits on the amount called for at the contract price for other specified classes of work. *Held*, that from the amount allowed the owner as damages for increased costs must be deducted the estimated profits, as sustained by the contractor's evidence as to other classes of work.

Scott, J., dissenting in part.

Appeal from Judgment on Report of Referee.

Action by the National Contracting Company against the Hudson River Water Power Company. From a judgment dismissing the complaint and awarding judgment for defendant on a counterclaim, plaintiff appeals. Modified and affirmed.

See 97 N. Y. Supp. 92.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Kellogg & Rose (L. Laflin Kellogg, Alfred C. Pette, Philip M. Brett, on the brief), for appellant.

Augustus N. Hand (Edgar T. Brackett and Richard Lockhart Hand, on the brief), for respondent.

CLARKE, J. The action was brought to recover damages for the defendant's alleged breach of contract for the construction of a dam and power plant upon the Hudson river in the counties of Saratoga and Warren, at a place known as "Spier Falls." The defendant, claiming that the breach of contract had been by the plaintiff, pleaded as a coun-

terclaim its damages resulting from said breach.   Upon a former trial the plaintiff recovered a judgment for the sum of $554,680.43.   Upon appeal to this court said judgment was reversed, and a new trial ordered before another referee.   110 App. Div. 133, 97 N. Y. Supp. 92.   The learned referee upon the second trial, upon a record substantially similar, governed by the law and the interpretation of the facts as laid down by this court, dismissed the complaint.

The court having held that the contract had been breached by the plaintiff, and not by the defendant, upon the former record, and the referee having reached the same conclusion upon this record, it follows that the defendant was entitled upon its counterclaim to such damages as it was able to show were the direct consequences of said breach by the plaintiff.   The measure of damages in such a case is the difference between what the defendant would have had to pay to plaintiff under the contract, if the plaintiff had performed, and the actual cost to the defendant of completing the work, provided that the same was fair and reasonable.

"A party to a contract which has been broken by the other has a right to fulfill it for himself as nearly as may be, but he must not do this unreasonably as regards the other party or extravagantly."   Sutherland on Damages, p. 268.

"The measure of damages for the breach of the defendant's covenants was the reasonable cost of the work.   The city could not proceed in a reckless or extravagant manner and charge the defendant for expenses unnecessarily or unreasonably incurred."   Mayor v. Second Ave. R. R. Co., 102 N. Y. 572, 7 N. E. 905, 55 Am. Rep. 839.

"The reasonable value of the work necessarily done * * * to fully complete the contract according to the plans and specifications should have been deducted from the contract price."   Powers v. City of Yonkers, 114 N. Y. 145, 21 N. E. 132.

Although the point was not in any manner raised upon the trial before the referee, it is now suggested for the first time that the general rule of damages hereinbefore set forth does not apply.   It is claimed that the contract itself in paragraph O provides the measure of damages recoverable by the defendant upon a breach by the plaintiff.   This claim was not presented by the pleadings.   The complaint asked damages, "not only in the value of the work done and materials and machinery purchased, * * * but also in the amount of profits that it would have made if it had been permitted to proceed and carry out the terms and conditions of said contract."   The answer alleged abandonment and refusal to proceed by plaintiff, and claimed damages by reason of the failure, neglect, and refusal by the plaintiff to perform, and that defendant has been and will be put to great cost and expense in proceeding with the said dam.   The reply denied each allegation of the fourth defense and counterclaim.   It does not seem that the provisions of paragraph O of the contract are applicable.   That paragraph is as follows:

"The said contractor further agrees that if the work to be done under this contract shall be abandoned, or if at any time the engineer shall be of the opinion, and shall so certify in writing to the company, that the said work is unnecessarily and unreasonably delayed, or that the said contractor is willfully violating any of the conditions or agreements of this contract, or is not executing said contract in good faith, or fails to show such progress in the execution of the work as will give reasonable grounds for anticipating its com-

plétion within the required time, the said company shall have power to notify the said contractor to discontinue all work, or any part thereof, under this contract; and thereupon the said contractor shall cease to continue said work, or such part thereof as the said company may designate, and the said company shall thereupon have the right, at their discretion, to contract with other parties for the delivery or completion of all or any part of the work left uncompleted by said contractor, or for the correction of the whole or any part of said work. And in case the expense so incurred by said company is less than the sum which would have been payable under this contract if the same had been completed by the said contractor, then the said contractor shall be entitled to receive the difference; and in case such expense shall exceed the last said sum, then the contractor shall, on demand, pay the amount of said excess to the said company, on notice from the said company of the excess so due. But such excess to be paid by the contractor shall not exceed the amount of the security for the performance of this contract."

It will be noticed that that is an agreement on the part of the contractor. The contractor agrees that if it "is willfully violating any of the conditions or agreements of this contract, or is not executing said contract in good faith," etc., the company shall have power to notify it to discontinue all work and at its discretion contract with other parties for the delivery or the completion of all or any part of the work left uncompleted by said contractor. The paragraph, it seems to me, conferred a power upon the defendant which it could exercise if it wished, and the provisions of the paragraph became operative only upon the exercise of that power. It meant that if, upon the report of the engineer in charge, the water company was so dissatisfied with the manner in which the contracting company was performing its contract that it notified it to cease work and then make a new contract with another contractor, in the event that the new contract turned out to be more advantageous to the company than the old, the original contractor was to receive the difference; and if, on the other hand, it turned out less advantageous, the original contractor was to pay the difference up to $25,000. It was in the nature of a guaranty, on the part of the original contractor, that no other contractor could do the work for less than it had agreed to do it, and if any other contractor did so do the work the original contractor would pay the difference up to $25,000.

· But it was not in consequence of any notice to the contractor by the company to cease work that the plaintiff abandoned the job, and the defendant did not exercise its discretion to make a new contract after such notice to the plaintiff to cease work. There was a total abandonment by the National Contracting Company. It quit the works. It took away its tools. It breached the contract. It was not ordered off the premises. No notice was given it to cease work. It walked out as has been found, unreasonably and wrongfully. The water power company proceeded to do the work itself, and it distinctly notified the plaintiff that, inasmuch as it had abandoned the work, the defendant considered the abandonment and refusal to proceed a breach of contract, and it proposed at once proceeding with the work and would hold the plaintiff responsible for all damages which it would sustain from such breach of the contract by it. To that measure of damages the plaintiff entered no protest or objection. It therefore seems to me that the provisions of paragraph O of the contract can in no way be applied to the situation as it now exists before this court. I am confirmed in this view by the

fact that, although the case has been twice tried and twice appealed, no such contention was presented, either by pleadings, motion, argument, or brief, until, after the submission of the case upon this appeal upon leave given a supplemental brief was filed raising the point for the first time. It is now too late to raise this point. Cases are to be reviewed upon appeal as presented below. Therefore the rule of damages to be applied to this case is the general rule hereinbefore first set forth, and the case must be determined in accordance therewith.

The contract under consideration in the case at bar did not provide for the payment of a lump sum for the entire work called for. It provided a unit price for each class of work and construction required. It provided specifically in paragraph F:

"That the engineer may make alterations in the line, grade, plan, form, position, dimensions, or material in the work herein contemplated, or any part thereof, either before or after the commencement of the construction. If such alterations diminish the quantity of work to be done, they shall not constitute a claim for damages or for anticipated profits on the work that may be dispensed with. If they increase the amount of the work, such increase shall be paid for according to the quantity actually done and at the price established for such work under this contract, or, in case there is no price established, it shall be paid for at its actual cost as determined by the engineer, plus 10 per cent. of such cost."

The learned referee has found as matter of fact that the defendant, after the plaintiff had abandoned the work of constructing the dam and doing the other work incident thereto, went on with the work done under the contract and completed it at a cost to it, in excess of the amount it would have been obliged to pay the plaintiff under its contract with it, of $383,352.60. It appears from the evidence that said amount was arrived at in the following manner:

It was in evidence that the construction of this dam necessarily involved the use of an extensive plant of machinery and apparatus for the work, consisting of cableways, derricks, hoisting engines, air compressors, stone crusher, pumps, pumping engines, and all the picks and bars and tools that are employed, locomotives, cars, and steam drills. If the plaintiff had performed, of course, this plant would have been provided by it, and the cost thereof would have been included among its operating expenses, and entered into its estimate of the unit price at which it undertook to do the several classes of work provided for the completion of the contract. As it abandoned the work, and the defendant itself undertook its completion, the defendant was required to procure said plant, and the cost thereof, about which there seems to be no controversy, was $323,689.66. Competent proof was offered that a fair estimate of the amount of the depreciation of such plant was from 40 to 50 per cent. The referee allowed 40 per cent., which amounted to $129,475.86.

For boulder, concrete, and rubble masonry the plaintiff's price per cubic yard was $4.55. The amount actually done by the defendant was 155,140.58 cubic yards, which would have amounted, if done by the plaintiff, to $705,889.64. The reasonable cost of said work, as testified to by the two experts, was between $5.50 and $8 per cubic yard. The actual cost, as established by the evidence, was $5.7071, making a total of $885,408.07, making the amount of the increased cost, which

was at the same time a fair and reasonable cost, $179,518.43. For random range ashlar the plaintiff's price per cubic yard was $9.50. The amount done by the defendant was 10,171.82 cubic yards, which, if done by the plaintiff, would have amounted to $96,632.29. The reasonable cost of such work, as testified to by the two experts, was from $12 to $30 per cubic yard. The actual cost as established was $15.9867, which amounted for the work done to $162,611.64, making the increased cost of the work, over the contract price, to the defendant, which at the same time was fair and reasonable, $65,979.35.

The price for rock excavation as provided for by the contract was $1.75 per cubic yard. The amount actually done by the defendant was 129,523.8 cubic yards, which would have cost, if done by the plaintiff, $226,666.65. The reasonable cost of such work, as testified to by the two experts, was from $1.75 to $2. The actual cost to the defendant was $1.6616, making the total for that item of $215,-228.51 actually spent. There was a decreased cost of this work over the contract price of $11,438.14. For earth excavation the plaintiff's price per cubic yard was 30 cents. The amount done by the defendant was 53,437.2 cubic yards. The cost of this work, if done by the plaintiff, would have been $16,031.16. The reasonable cost for this work, as testified to by the experts, was 45 cents per cubic yard. The actual cost was 68.61 cents, making a total of $36,132.64. As the actual cost, however, it not proved to have been a fair and reasonable cost, the defendant should not be allowed in this item an increased cost above 45 cents per cubic yard, which would amount to $8,015.98.

For coping the plaintiff's price per cubic yard was $9.75. The amount done by the defendant was 99 cubic yards, which at the plaintiff's price would have amounted to $965.25. The reasonable cost, as testified to, was $9; but the defendant actually did it at the price of $6.8774 per cubic yard, making a total of $680.87—a decrease, therefore, of $284.38.

The amount of the defendant's claim is therefore, made up of the item for depreciation in value of the plant and the five items hereinbefore enumerated. But there were numerous other classes of work provided for in the contract, and if the measure of damages is the difference between what it would have cost the defendant, if the plaintiff had performed, and the amount that it actually cost the defendant itself, we must, it seems to me, look at the whole contract. It is obviously unfair to pick out five classes of work upon which to base a claim for damages, and leave the other classes out of consideration, because it might be that as to the other classes the defendant has been enabled to do the work at a much lower price than that which it had promised to pay to the plaintiff, and, if so, of course the plaintiff was entitled to a credit therefor.

While it is true that under the contract the plans might be altered, and the kinds and quantities of work increased or diminished, the burden was put upon the defendant, in establishing its counterclaim, to show that the classes of work called for by the contract, in regard to which it had not given evidence, were classes of work which had been omitted by reason of a proper change of plans. It gave no such testimony. The plaintiff, on the other hand, did furnish testimony as

to a number of these items and as to its estimated profit upon the amount called for at the contract price. In the absence of any evidence to the contrary whatever, the claims must be taken as established, and therefore from the amount allowed as damages for increased cost upon the five items must be taken the estimated profits, as sustained by the plaintiff's evidence, as to the other items of the contract. These items are as follows: 42,227 feet of timber work; plaintiff's estimated profit, $295.58. 14,414 feet of timber work; plaintiff's estimated profit, $100.89. Dressing, estimate by plaintiff 20,240 square feet; plaintiff's estimated profit, $5,060. Wrought iron and steel, 203,170 pounds; plaintiff's estimated profit, $5,079.25. Superstructure and power station complete; plaintiff's estimated profit, $10,000. Machinery to the amount of $307,809.54, upon which plaintiff's estimated profit was put at $30,780.95. Canal dam overflow, 353 cubic yards; plaintiff's estimated profit, $1,147.25. Canal dam second-class masonry, 233 cubic yards; plaintiff's estimated profit, $349.50. Brick work, 3,120 cubic yards; plaintiff's estimated profit, $31,200.

There are other items set up in the plaintiff's schedules, but it appears that they are included within the five items already considered in the statement of the increased cost of the work—the result being, clearly sustained by the evidence as it seems to me, that the amount of the increased cost on three items, with the addition of the amount for depreciation of the plant, amounts to $382,989.62; that the decrease in cost on two items and the amount of the estimated profits on classes of work not included in the defendant's claim amount to $95,735.94, for which the plaintiff is entitled to credit as against the amount of damages claimed as for increased cost; the conclusion being that the amount properly chargeable, upon this evidence, as damages accruing to the defendant by reason of the breach of contract by the plaintiff, was $287,253.68.

It follows, therefore, that the judgment appealed from should be reversed, and a new trial ordered, with costs to abide the event, unless the defendant stipulates to modify the judgment by reducing the amount found due to the above sum of $287,253.68, with the appropriate change of the interest sum, in which event the judgment appealed from will be so modified, and, as modified, affirmed, without costs in this court.

PATTERSON, P. J., and INGRAHAM and LAUGHLIN, JJ., concur.

SCOTT, J. I should find no difficulty in concurring in the affirmance of this judgment, as modified in accordance with the views of Mr. Justice CLARKE, were it not for the provisions of clause O of the contract respecting the damages to be paid by the contractor in case of his abandonment or nonfulfillment of the contract. That clause reads as follows:

"(O) The said contractor further agrees that if the work to be done under this contract shall be abandoned, or if at any time the engineer shall be of the opinion, and shall so certify in writing to the company, that the said work is unnecessarily and unreasonably delayed, or that the said contractor is willfully violating any of the conditions or agreements of this contract, or

is not executing said contract in good faith, or fails to show such progress in the execution of the work as will give reasonable grounds for anticipating its completion within the required time, the said company shall have power to notify the said contractor to discontinue all work or any part thereof under this contract; and thereupon the said contractor shall cease to continue said work, or such part thereof as the said company may designate, and the said company shall thereupon have the right at their discretion to contract with other parties for the delivery or completion of all or any part of the work left unexpended by said contractor, or for the correction of the whole or any part of said work. And in case the expense so incurred by said company is less than the sum which would have been payable under this contract if the same had been completed by said contractor, then the said contractor shall be entitled to receive the difference; and in case such expense shall exceed the last-stated sum; then the contractor shall on demand pay the amount of said excess to the said company on notice from the said company of the excess so due. But such excess to be paid by the contractor shall not exceed the amount of the security for the performance of this contract."

As I read that clause, it is intended to cover and provide for the cases in which the water company would be justified in treating the contract as at an end and taking the work into its own hands. This it might do either (1) if the contractor abandoned the work, or if (2) the work should be unnecessarily or unreasonably delayed, or if (3) the contractor should willfully violate any of the conditions or agreements of the contract, or if (4) the contractor should not be excuting the contract in good faith, or if (5) the contractor should fail to show such progress as would give a reasonable ground for anticipating the completion of the work within the required time. In case any of these conditions arose, the company reserved the right to treat the contract as forfeited and to proceed with the work itself. In examining these conditions it will be seen that the first, to wit, abandonment of the work, was of such a nature that its existence, if it should exist, would be patent and apparent, while the other conditions implied the formation of an opinion based upon patent facts. Thus, if there were delay, it would be a matter of opinion whether or not that delay was necessary and reasonable; if it was claimed that the contractor willfully violated the terms of his contract, a question of judgment or opinion would at once arise; and so as to the good faith in executing the contract, or the probability of completing the work in time, a like question of judgment or opinion was necessarily involved; while an abandonment of the work by the contractor would be visible and apparent as a fact to any observer, and involved no exercise of judgment or expression of opinion. So we find in the clause quoted a provision that as to any of the possible breaches by the contractor, except abandonment of the work, the action of the company in electing to terminate the contract must be predicated upon a certificate of the engineer, by another clause created arbiter between the parties, that in his opinion the contractor has failed in some of the particulars mentioned in the clause; but in case of an abandonment of the work no such certificate is provided for, for the obvious reason that no such certificate would be appropriate or necessary to establish a patent fact. By the strict letter of the clause, and from the nature of the case, no certificate of the engineer expressive of his opinion is required when, as in this case at bar, the contractor's default consists of an abandonment of the work. The plaintiff's liability rests

on the finding that it unwarrantably abandoned the work, and this was the position assumed by the defendant when, under date of December, 1900, it finally notified the plaintiff that the latter had abandoned the work, and that the water company elected to treat such abandonment as a breach of the contract, and would itself at once proceed with the work. It seems to me that there was then presented the precise condition contemplated by and provided for in the clause quoted above, to wit, an abandonment of work by the contractor, and election by the water company to treat such abandonment as a breach of the contract, a notification of such election to the contractor, and the completion of the work by the company. There was no certificate by the engineer; but, as already shown, that was not required where there was a complete abandonment.

The consequences following upon an election by the water company to terminate the contract are precisely defined by the clause quoted. It was authorized to contract with other parties for the completion of all work left uncompleted by the contractor, and this the company proceeded to do. The clause then provided, as is usual in such contracts, that if the expense incurred by the company in completing the work should be less than would have been payable to the contractor, if it had completed it, then said contractor should be entitled to receive the difference; and if the expense should exceed the amount which would have been payable to the contractor, if it had completed the work according to the contract, then said contractor should, on demand, pay to the company the difference. Then follows an unusual clause, which, as I consider, limits the amount which defendant may recover under its counterclaim. It reads as follows:

"But such excess to be paid by the contractor shall not exceed the amount of the security for the performance of this contract."

This clause is, as has been said, unusual, and, as the event discloses, affords the defendant most inadequate damages for the contractor's default; but we cannot disregard it merely because it is unusual, or will result in providing inadequate relief. It is not our place to make a contract for the parties, but merely to interpret and enforce the contract which they made for themselves. It is idle to speculate upon the reasons which led to the insertion of that clause in the contract. It is sufficient that it is there, and it would be difficult to compose a phrase which would more effectually or completely limit the amount of damages to be paid by the contractor under the circumstances disclosed by the record before us. Unless, therefore, the plaintiff has in some way waived the right to insist upon this limitation of its liability, I can see no escape from its application. It is suggested that it has waived it by its pleadings, and by its course in this litigation. The complaint alleges the making of the contract, its breach by the defendant, and demands damages. The answer, denying plaintiff's allegations, sets up a counterclaim, alleging abandonment of the work by plaintiff, that defendant has thereby suffered damages, and asks judgment therefor. The reply is a general denial of the allegations of the counterclaim. The plaintiff thereby denied both that it had broken its contract and that defendant had suffered damages thereby. The special clause under con-

sideration could not have been pleaded either as a complete or a partial defense. It went not to the defendant's right to recover damages, but merely placed a limit upon the amount which could ultimately be recovered. It therefore had no proper place in the reply, and its omission therefrom cannot be construed into a waiver.

It certainly seems to be a surprising fact that in the six years during which this case has been pending, including two long trials before referees, three appeals to this court, and one appeal to the Court of Appeals, the attention of the court should not have been called to this particular clause in the contract until after the oral argument on this appeal; but that circumstance does not, in my opinion, justify us in holding that the plaintiff had waived its benefit. The first appeal to this court, and the appeal to the Court of Appeals, dealt only with a demurrer to the answer. On the first trial judgment went for the plaintiff, and only the plaintiff's right to recover was before this court on the appeal from that judgment. Of course, no question then arose respecting any limitation there might be in the contract affecting a possible recovery by defendant against plaintiff. Upon the last trial only did the question as to how much defendant should recover from plaintiff become important. The plaintiff might well then have called the attention of the referee to the limitation contained in clause O of the contract; but, if it had done so, while a different judgment might have been entered, no different issues would have been presented for trial. The record shows that the plaintiff's position throughout was that it was the defendant who was in fault, and the plaintiff who was entitled to damages, and, notwithstanding the limitation upon defendant's recovery, if it should recover, it was still necessary that defendant should offer proof of its damages; for the clause quoted was not a stipulation for liquidated damages, but merely a limitation upon the amount to be recovered by defendant in case of a breach by plaintiff. The defendant could not recover in any event more than the amount as limited, and could not recover even that, unless it proved so much.

In point of fact the defendant proved vastly more, and in my opinion, this being an action triable by a referee, it is unnecessary to direct a new trial, but the judgment should be reduced to $25,000, with interest from date of service of the counterclaim, and the costs included in the judgment, and, as so modified, affirmed, without costs in this court.