[Civ. No. 5332.  First Appellate District, Division One.—January 26, 1927.]

## J. B. CLOVER, Appellant, v. J. C. JACKSON, Respondent.

[1] CORPORATE SECURITIES ACT—SALE OF OWN SECURITIES BY NATURAL PERSON — STOCK ACQUIRED BEFORE PASSAGE OF ACT — CONSTITUTIONAL LAW.—Section 2, subdivisions 9 and 9a, and sections 5 and 14 of the Corporate Securities Act (Stats. 1917, p. 231, as amended, Stats. 1923, p. 90), in so far as they attempt to require a natural person to secure a broker's license before he can lawfully sell his own securities, are unconstitutional; hence, a sale of shares of stock by a natural person without a broker's license is not void and does not constitute a public offense, where the stock was issued to and paid for by the owner, who was not the insurer or underwriter thereof, prior to the passage of the Corporate Securities Act.

(1) 12 C. J., p. 1160, n. 67 New, p. 1280, n. 79.  (2) 15 C. J., p. 922, n. 13.

APPEAL from a judgment of the Superior Court of Los Angeles County. Bert A. Weyl, Judge. Reversed.

The facts are stated in the opinion of the court.

Wm. B. Ogden for Appellant.

Wm. H. Neblett and John Dickinson for Respondent.

KNIGHT, J.—An appeal by plaintiff from a judgment given in favor of defendant on a cross-complaint in an action brought to recover installment payments claimed to be due under a written contract whereby defendant agreed to buy from plaintiff eighty shares of the capital stock of the Rush Creek Mutual Ditch Company.

Answering, defendant denied that said installments were then due and interposed affirmative defenses alleging fraud in procuring the contract, and that said contract was void under the provisions of the Corporate Securities Act (Stats., 1917, p. 673) in that the sale of said stock was made by plain-

Blue sky laws, notes, 15 A. L. R. 262; 24 A. L. R. 523; 27 A. L. R. 1169; 30 A. L. R. 1331; 40 A. L. R. 1014.

tiff without having first obtained a broker's license as required in said act. Defendant also filed a cross-complaint setting forth substantially the same matters alleged in the affirmative defenses, and prayed for a rescission of the contract of sale and the return of a cash payment of $800 made on the purchase price of said stock at the time of the execution of the contract. In answer to the cross-complaint plaintiff denied the material allegations thereof, and alleged that the provisions of said Corporate Securities Act under which defendant sought to invalidate the sale were unconstitutional.

The trial court found in substance that nothing was due plaintiff under the complaint for the reason that the action had been brought prematurely; that plaintiff had committed no fraud, but that the contract of sale was void under the Corporate Securities Act for the reasons set forth in the affirmative defense and in the cross-complaint. Accordingly, judgment was entered that plaintiff take nothing by his action; that the contract of sale be canceled and that defendant have and recover from plaintiff the said sum of $800 with interest.

Plaintiff's appeal herein is directed against that portion of the judgment, given under the cross-complaint, declaring the contract to be void and for the return of the $800 cash payment made thereunder, and does not involve the remaining portions of the judgment pertaining to the issues arising under the allegations of the complaint, or those relating to the question of fraud.

Section 5 of the Corporate Securities Act as it stood at the time the foregoing transactions occurred provided in part that "no person or company shall act as an agent or broker until such person or company shall have applied for and secured from the commissioner a certificate, then in effect, authorizing such person or company so to do . . ."; and subdivisions 9 and 9 (a) of section 2 of said Corporate Securities Act provided as follows: "The word 'broker' as used in this act includes every person or company other than an agent, who shall in this state, engage, either wholly or in part, in the business of selling, offering for sale, negotiating for the sale of, or otherwise dealing in any security or securities issued by others or of underwriting any issue of securities or of purchasing such securities with the purpose of reselling them or of offering them for sale to

the public for a commission or at a profit; excepting therefrom the following: (a) any owner of any security who is not the issuer and underwriter thereof, who sells or exchanges the same for his own account; *provided* that such sale or exchange is not made in the course of repeated and successive transactions of like or similar character by him: . . . " By section 14 of said act it was declared that any person who failed to comply with or wilfully violated said act was guilty of a public offense punishable by imprisonment in the state penitentiary or in the county jail or by a fine. It was therefore respondent's contention in the trial court, as it is here, that since the statute denounced as a penal offense the act of selling stock without a broker's certificate, a contract founded upon or made pursuant to such criminal act is void even though the statute does not expressly so declare. (*Berka* v. *Woodward,* 125 Cal. 119 [74 Am. St. Rep. 31, 45 L. R. A. 420, 57 Pac. 777] ; *Smith* v. *Bach,* 183 Cal. 259 [191 Pac. 14].)

The following are the facts: The Rush Creek Mutual Ditch Company, a mutual irrigation company, organized during the year 1912, under the laws of this state, was engaged in developing water in Mono County, California, for the purpose of irrigating certain land in the vicinity of Mono lake. The total capitalization of said company consisted of 30,000 shares, of which 29,995 were, in January, 1913, issued to the Mono Valley Improvement Company in consideration of the performance of a contract made by the latter company to construct a canal through lands to which the ditch company proposed to furnish water for irrigation. Each share represented and carried with it an ownership interest in said canal and the water rights and other properties of said ditch company, and a permanent right to have, use, and enjoy one inch of water, measured under four-inch pressure, diverted from said canal during the irrigation season for irrigating and reclaiming lands under and contiguous to the canal.

Said improvement company failed to complete the construction of said canal and in June, 1918, its contract to do so was taken over by appellant, who is a construction engineer, having specialized in irrigation work for over twenty years in the states of Oregon, Idaho, Colorado, and California. In consideration for the assumption by appellant

of the performance of said uncompleted contract to build said canal, said improvement company transferred to him 19,120 shares of the stock held by it in said ditch company, also certain promissory notes of the face value of $55,000 and an interest in 428 acres of land in Mono County. Under his contract appellant was obliged to construct the canal for a distance of about 30 miles, and up to the time of trial he had completed nine miles thereof and expended for this purpose approximately $50,000.

Soon after receiving the entire block of stock from said improvement company appellant advertised the same for sale through the medium of newspapers and printed literature. Being attracted by said advertisements, respondent, in April, 1919, entered into the contract in question for the purchase of 80 shares at a price of $60 a share, making an initial payment thereon of $800 and agreeing to pay the balance of $4,000 in annual installments extending over a period of ten years; but appended to the contract was an agreement on the part of appellant that none of said installments should become due and payable until said canal had been completed to a point specified therein, from which water could be diverted for irrigation of the real property described therein; and thereafter all payments due up to that time should be paid within thirty days. The contract for the sale of the stock to respondent was the first one made by appellant after acquiring the stock, the next one being made with other parties some five months later, and thereafter fifteen or twenty similar contracts were entered into, the total sum received from all sales of stock amounting to approximately $20,000.

The trial court found specifically from the foregoing facts that at the time of the sale in question appellant was the owner of a large number of shares of the capital stock in said company, of which the 80 shares sold to respondent were a part, and that the entire block of stock acquired by him had been issued to, fully paid for by, and the right to transfer, sell, and assign vested in appellant's assignor in January, 1913, prior to the enactment of said Corporate Securities Act. The main question presented for determination, therefore, is whether, in view of appellant's conceded ownership of the stock, which so far as the record shows is not tainted with fraud, and under the circum-

stances under which the sale was made to respondent, the provisions of said Corporate Securities Act requiring a broker's certificate to sell the same are, as appellant contends, unconstitutional, as being violative of the rights of individuals to own, hold and dispose of property, and consequently inoperative as to the transaction here involved.

Since this action was tried and decided in the trial court, and subsequent to the filing of the record on appeal herein the constitutionality of the provisions of the Corporate Securities Act challenged herein was fully considered and determined in the recent case of *People* v. *Pace,* 73 Cal. App. 548 [238 Pac. 1089], a petition for hearing before the supreme court having been subsequently denied. It was therein held that subdivisions 9 and 9 (a) of section 2 of said act, as amended in 1923 (which, so far as the questions here involved are concerned, are identical in terms with the original enactment of 1917, in force at the time of this sale) were unconstitutional in so far as they attempted to require a natural person to secure a broker's permit as provided in said act before he may lawfully sell his own securities, where he was not the issuer or underwriter of the same.

[1] We are of the opinion that the facts of the instant case fall clearly within the rule there stated, and that therefore the decision in that case must be held as controlling here. There the defendant Pace, president of a domestic corporation engaged in the candy business, acquired a large amount of the stock of said corporation, by purchasing from the company certain unpaid promissory notes given in payment of stock subscriptions, the company holding the stock as collateral for the payment of said notes. Upon default in payment of said notes, Pace became the *bona fide* owner of said stock and thereafter, without having a broker's certificate, disposed of a number of shares thereof in sixteen separate sales covering a period of about five months. In support of the constitutionality of the statute it was there contended, as here, that the effect of the provisions of said act under consideration was merely to reasonably regulate the mode of disposing of property for the protection of the public and in the interests of general welfare, and that the owner's right of disposition was not taken away thereby. Answering this contention the court

said, after reviewing a number of cases upon the subject: "But nowhere in the authorities sustaining the regulation of the business of brokers do we find authority to sustain the contention made here, that the police power under the guise of general welfare may be invoked to interfere with the sale by an individual of his own property when the acquiring and possession of such property is not contrary to law."

The instant case, on principle, cannot be fairly differentiated from the case cited, although in two particulars their facts differ; here the stock was acquired by the present owner's predecessor several years prior to the enactment of the Corporate Securities Act, which does not appear to be the fact in the Pace case, and appellant herein did not apply for a broker's certificate prior to the sale of the stock; whereas, in the Pace case the stock was sold by Pace after a broker's permit, previously issued to him, had been revoked. But it would seem that the presence in the case before us of the distinguishable facts above mentioned only furnishes additional grounds for the application herein of the doctrine announced in the Pace case.

Appellant's constitutional objections herein were based mainly upon the proposition that the stock which was the subject of the sale in question was issued to and paid for by appellant's predecessor long before the enactment of the Corporate Securities Act, by virtue of which act respondent seeks to annul the sale, and no contention was made as to the effect of the provisions of said act upon a case where the owner sold stock issued subsequent to the passage of said act, such as the Pace case proved to be. Nevertheless, the legal principles announced in that case, being decisive of the legal issues presented here, must be given application herein and this appeal governed thereby.

Therefore, upon the authority of the Pace case and for the reasons stated therein, it is held that the sale of said stock by appellant, under the circumstances hereinabove mentioned, did not constitute a public offense, and consequently the judgment declaring the sale to be void upon that ground is reversed.

Tyler, P. J., and Campbell, J., *pro tem.*, concurred.