**SIX COMPANIES OF CALIFORNIA et al.
v. JOINT HIGHWAY DIST. NO. 13
OF CALIFORNIA.**

No. 9113.

Circuit Court of Appeals, Ninth Circuit.
March 14, 1940.

Rehearing Denied April 25, 1940.

---

[1] The reversal of this case in 277 N.Y. 66, 13 N.E.2d 41, 115 A.L.R. 614 did not affect this point.

Paul S. Marrin, Thelen & Marrin, and DeLancey C. Smith, all of San Francisco, Cal., and Eugene E. Trefethen, of Oakland, Cal., for appellant Six Companies.

Jewel Alexander, W. C. Bacon, and Redman, Alexander & Bacon, all of San Francisco, Cal., for appellant Surety Companies.

Archibald B. Tinning, of Martinez, Cal., and T. P. Wittschen, of Oakland, Cal., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Six Companies of California, a Nevada corporation, contracted with Joint Highway District No. 13 of the State of California to construct the Broadway Tunnel, near Oakland. For convenience these parties will be referred to as the Contractor and the District. After part performance the Contractor attempted to rescind and brought suit to recover the reasonable value of materials and labor theretofore furnished, asserting that the District had breached the contract and had misrepresented the nature of the country through which the tunnel was to be driven.

The District answered, alleged a wrongful abandonment of the contract, and by cross complaint sought damages against the Contractor and its sureties. The court found on all issues in favor of the District, awarding damages in a large sum on the cross complaint. The Contractor and its sureties appeal.

The contract, dated June 4, 1934, was for the construction of two parallel tunnels, together with approaches and appurtenant structures, the tunnels to penetrate the Coast Range between Alameda and Contra Costa counties.[1] Prior to bidding the Contractor was furnished with a copy of the plans and specifications. The specifications, which were made a part of the contract, invited attention to a geological report on file in the office of the District Engineer. The Contractor examined this report and copied a part of it. It also copied an estimate of the cost of the work prepared by the District Engineer, and inspected a test bore and test pits on the ground.

The contract required completion of the work within 720 days from its date; but the specifications contained a clause entitling the Contractor to an extension of time under conditions presently to be stated. There was a provision for liquidated damages in the amount of $500 per day in the event of delay. Time was made of the essence.

The Contractor met with difficulties which put it behind schedule. Slides occurred during the construction of an approach, and other incidents delayed the commencement of the tunnel work. There was delay in getting the proper equipment and trouble in working out an efficient method of pouring concrete. The Contractor had assumed that for the major portion of the distance to be tunneled the country rock would hold without artificial support until the concrete lining was installed in the bores. However, unstable and swelling ground was encountered to the extent that constant timbering was necessary and all timbers had to be left in place. In April or May, 1935 the Contractor complained to the District Engineer that the work had been delayed by bad ground and rainy weather. Shortly thereafter it requested an extension of time, but the request was denied. In August of that year it again requested an extension and claimed additional compensation because of the difficult ground conditions.

On the day the latter request was filed a cave-in occurred which led to a stoppage of the work by order of the state Industrial Accident Commission. After work was resumed a second cave-in caused a further interruption. Finally, on May 11, 1936, the Contractor filed its last application for an extension, which was denied three days later.

On June 10, 1936 the District delivered a check representing a progress payment for the month of May. The amount certified as due by the District Engineer was actually $3500 more, but the difference was withheld as liquidated damages for the seven days' delay occurring subsequent to May 24, 1936, the date fixed for final completion of the work. The Contractor returned the check and by letter to the District purported to rescind, one of the stated grounds for rescission being the retention of the $3500. On the same day—June 13—the Contractor quit work, at which time the project was about 70% complete. The District promptly gave notice that unless work was resumed within three days the action would be regarded as an abandonment. Some two weeks thereafter the Contractor

---

[1] The total contract price was $3,683,931.

commenced this suit. Later the District let new contracts for the completion of the project and in December, 1936 filed its cross complaint.

The Contractor predicates its claimed right to rescind on three grounds: (a) that the retention of the liquidated damages, together with the implied purpose of the District to make further deductions for delay, was a material breach of the contract; (b) that the District misrepresented the nature of the ground through which the tunnels were to be driven; and (c) that the District breached the contract by refusing to perform certain work in setting lines and grades. All these grounds were enumerated in its rescinding letter.

(a) With respect to the withholding of the liquidated sum, it is urged that the District failed to obtain its engineer's opinion whether the work had been unavoidably delayed;[2] and that, assuming the engineer had ruled on the subject, his opinion was arbitrary and capricious, or so grossly mistaken as not to be a binding determination.

■ The trial court found that the delays were not attributable to Act of God or to stormy or inclement weather, and that they were not unavoidable. Also that the District Engineer had in fact passed on the Contractor's claimed right to an extension, and that in ruling adversely the engineer acted fairly and honestly in the exercise of his judgment. These findings are supported by the evidence.

■ The question whether there were unavoidable delays was one committed by the contract to the judgment of the engineer. His judgment may be impeached for fraud only, or for mistake so gross as to amount to fraud. American Hawaiian, etc., Co. v. Butler, 165 Cal. 497, 504, 513, 133 P. 280, 286, Ann.Cas.1916C, 44; Connell v. Higgins, 170 Cal. 541, 150 P. 769; Gray v. Cotton, 166 Cal. 130, 134 P. 1145. See also, United States v. Gleason, 175 U. S. 588, 20 S.Ct. 228, 44 L.Ed. 284; Northern Pac. Ry. Co. v. Twohy Bros. Co., 9 Cir., 95 F.2d 220, 225. There is persuasive evidence, most of it coming from the Contractor's own witnesses, that by the use of proper methods and equipment the delay could have been avoided. Clearly, no grounds exist for holding that the decision of the engineer was either fraudulent or palpably unreasonable.

■ It is argued that, because of the stoppage order of the state authorities following the cave-ins, and in line with a local statute,[3] the delay in performance was excused by operation of law. The court found, however, that any delays which occurred were caused by the Contractor's own acts; and there is ample support for the holding that the cave-ins were due to the Contractor's incompetence. We think the state statute has no application to a situation like this. See Restatement, Contracts, Vol. 2, § 458.

■ It is urged that the delay was excused under the modern doctrine of impossibility of performance. We find no merit in the argument. The ground conditions encountered were not vitally different from those which the Contractor should reasonably have anticipated. See Williston on Contracts (Rev.Ed.), Vol. 6, § 1931, p. 5410; Restatement, Contracts, Vol. 2, §§ 454, 456.

■ (b) The Contractor asserts that it was misled by statements in the geological report to the effect that the rock structures were favorable from an engineering standpoint. It refers also to provisions in the specifications which it claims gave rise to a similar belief. On this issue the trial court properly found that the District made no misrepresentations; that the Contractor assumed the risk of unfavorable ground conditions; and that even if the facts had been misrepresented the point was waived.

The contract stipulated that there was no guaranty of the accuracy of the geological report, and that bidders were not relieved of the duty of making their own investigations; and that the submission of a bid should be considered as prima facie evidence that the bidder had examined the site and had satisfied himself as to the conditions. Also that the Contractor was skilled in the trade while the District was not.

Moreover, it affirmatively appears that the Contractor was under no illusions concerning the possible difficulties to be met with in tunneling the Coast Range, and

---

2 A subparagraph of the specifications reads as follows: "*Extension Of Time.*— The time during which the Contractor is delayed in said work by Acts of God, or by stormy or inclement weather or by any reason which, in the judgment of the District Engineer, unavoidably delays the work, shall be added to the aforesaid time for completion* * *."

3 § 1511, California Civil Code.

that it was not misled by the geological report or by any provision in the contract. Indeed, there was no claim of misrepresentation until more than a year after the work began. It was not until August, 1935 that the Contractor claimed the right of rescission on this ground; and even then it waited almost a year longer before attempting to rescind.

(c) With respect to the claim that the District breached the contract by failing to indicate lines and grades, the evidence shows that the District maintained the required monuments on a center line following within 100 to 300 feet of the core. From the end of this line the Contractor was compelled to extend the lines and grades into the drifts. It several times complained that the District was not fulfilling its obligation in this respect, but the latter as consistently maintained that it was doing all the contract required.

We may assume, without deciding, that the District was at fault in failing to continue the lines into the drifts. From the commencement there had been an honest dispute in respect of this matter, and remembering the magnitude of the project we think the refusal of the District to furnish the proper lines for the balance of the operation was not such a material breach as would of itself justify a rescission. The point seems to be largely makeweight.

### Cross Complaint of the District

The following items make up the judgment entered on the cross complaint: (1) $142,000 as liquidated damages for delay of 284 days; (2) $69,001.85, covering "interim" expenditures made by the District in protecting, insuring and measuring the work, and in advertising for new bids; and (3) $98,066.31, representing the completion cost in excess of the Contractor's bid, after deducting unpaid amounts owing the Contractor at the time of abandonment.[4]

The tunnels were not completed until more than a year after the prescribed date. In computing liquidated damages for the delay, the court included the delay of 20 days occurring prior to abandonment, and found that a reasonable time for the completion of the project was 264 days. The period of 149 days elapsing between the date of abandonment and the resumption of work under the new contracts was excluded from the computation.

Appellants assert that the stipulation for liquidated damages is unenforceable, citing California Civil Code §§ 1670, 1671. This statute declares such a provision void unless it appears from the nature of the case that it would be "impracticable or extremely difficult to fix the actual damage", in which event the amount agreed upon by the parties is presumed to be the actual damage.

Under this statute it is held that the test of impracticability is to be applied as of the date of the contract, rather than as of the time of trial. Hanlon Drydock & Shipbuilding Co. v. McNear, 70 Cal.App. 204, 232 P. 1002. The question is one of fact; and the party seeking recovery under a provision for liquidated damages has the burden of alleging and proving facts sufficient to satisfy the statutory requirement. City of Los Angeles v. Shafer, 53 Cal.App. 458, 200 P. 384; Consolidated L. Co. v. City of Los Angeles, 33 Cal.App. 698, 166 P. 385; Robert Marsh & Co. v. Tremper, 210 Cal. 572, 292 P. 950; Mente & Co. v. Fresno C. & W. Co., 113 Cal.App. 325, 298 P. 126; Kelly v. McDonald, 98 Cal.App. 121, 276 P. 404.

It was shown that the District—a special and temporary public corporation—was under the expense of keeping its organization intact during the added time required to complete the project. The actual cost of the operating overhead was $272.89 per day. It is plain that this item of damage was neither impracticable nor extremely difficult of ascertainment, hence does not of itself remove the cause from the ban of the statute. However, the District pleaded and proved, in addition, that the project provided a modern highway of low gradient between portions of Contra Costa County and the business section of Oakland, and was several miles shorter than existing undesirable routes which it was designed to supplant; that more than a million and a half vehicles yearly traveled the old routes, all of which could more safely and more economically move over the new highway; and that delay in completing the project would result in loss to

---

[4] The difference between the cost of completing the work and the contract price for the unfinished work was $591,- 325.47. From this the court deducted the sum of $493,259.16, owed the Contractor for work done prior to abandonment.

resident taxpayers for whose use the highway was intended—loss great in extent but impracticable of ascertainment. The question here is whether this proof satisfies the requirements of the local statute.

The only California case we have found throwing important light on the subject is City of Oakland v. De Guarda, 95 Cal.App. 270, 272 P. 779, 273 P. 819. In that case there was a failure to perform a contract for the improvement of a street. Special assessments had been levied against abutting properties, and in a reletting of the work it was necessary to increase the amount of these assessments to meet the increased cost of the new contract. The court allowed recovery of an amount equal to the added assessments in a suit by the municipality on the contractor's bond, on the theory that the municipality was trustee for the property owners and the damages were recoverable for their benefit. The bond made no mention of the property owners. Cf. Consolidated L. Co. v. City of Los Angeles, supra.

■ Although a municipality, in its corporate capacity, may suffer no damage from delay in the completion of a public improvement, it may validly contract for liquidated damages for delay in contemplation of the inconvenience and loss which will flow to its inhabitants for whose benefit the improvement is intended and at whose cost it is to be built. Such is the rule applied in the cases generally. United States v. Bethlehem Steel Co., 205 U.S. 105, 27 S.Ct. 450, 51 L.Ed. 731; Maryland Dredging etc. Co. v. United States, 241 U.S. 184, 36 S.Ct. 545, 60 L.Ed. 945; City of Reading v. United States Fidelity & Guaranty Co., D.C. E.D.Pa., 19 F. Supp. 350; Bankers' Surety Co. v. Elkhorn R. Drainage Dist., 8 Cir., 214 F. 342; Brooks v. Wichita, 8 Cir., 114 F. 297; Parker-Washington Co. v. Chicago, 267 Ill. 136, 107 N.E. 872, Ann.Cas.1916C, 337; Marshall v. Atkins, 60 Tex.Civ.App. 336,

127 S.W. 1148; Ann.Cas.1912C 1028; Whiting v. New Baltimore, 127 Mich. 66, 86 N.W. 403; Detroit v. People's Telephone Co., 135 Mich. 696, 98 N.W. 745; Springwells Township v. Detroit P. & N. R. Co., 140 Mich. 277, 103 N.W. 700. For other cases on the subject see note, 34 A.L.R. 1345 et seq. The provision is valid.

■ Appellants contend that the clause does not apply to the delay in completion after abandonment by the Contractor. The stipulation is shown on the margin.[5] Fairly construed, it means that the period for which the damages are to be computed comprises the time between the agreed date of completion of the "work" and its actual completion, whether by the Contractor or by the District. It is not for delay in completion of the contract but for delay in the completion of the work that the damages are provided. The clause does not in terms or by implication empower the Contractor to put an end to the accrual of the liquidated damages by the mere process of refusing to go ahead after the time for completion has passed. The Court of Appeals for the Second Circuit in construing a New York contract so holds and finds authority therefor in the New York decisions. Southern Pacific v. Globe Indemnity Co., 2 Cir., 21 F.2d 288. To similar effect are School Dist. No. 3 v. United States Fidelity & G. Co., 96 Kan. 499, 152 P. 668; Natl. Loan & Exch. Bank v. Gustafson, 157 S.C. 221, 154 S.E. 167, 171; City of Reading v. United States Fidelity & G. Co., supra.

Cases cited by appellants and by Williston on Contracts (Rev.Ed.), Vol. 3, § 747, p. 2210, are, with one exception,[6] distinguishable. They are Garcy v. City of Pasco, 89 Wash. 382, 154 P. 433, where there was no abandonment by the contractor; likewise in Fidelity & Deposit Co. v. Robertson, 136 Ala. 379, 34 So. 933, 944, in Moore v. Board of Regents, 215 Mo. 705,

---

[5] " * * * The parties hereto expressly stipulate and agree that time is the essence of this contract. In case the work is not completed within the time specified in the contract or within such extensions of the contract time as may be allowed as herein provided, it is distinctly understood and agreed that the Contractor shall pay the District as agreed and liquidated damages and not as a penalty five hundred dollars ($500.-

00) for each and every working day which may elapse between the limiting date as herein provided and the date of actual completion of the work, said sum being specifically agreed upon as a measure of damage to the District by reason of delay in the completion of the work * * *."

[6] Village of Canton v. Globe Indemnity Co., 201 App.Div. 820, 195 N.Y.S. 445. See 52 Harv.L.Rev. 160, 161.

115 S.W. 6, in Joint School Dist. v. Bailey-Marsh Co., 181 Wis. 202,. 194 N.W. 171, and in Shields v. John Shields Cons. Co., 81 N.J.Eq. 286, 86 A. 958; City of Rainier v. Masters, 79 Or. 534, 154 P. 426, 155 P. 1197, L.R.A.1916E, 1175, where there was no allegation or proof of the completion of the work; Moses v. Antuono, 56 Fla. 499, 47 So. 925, 20 L.R.A.,N.S., 350, and Board of Education v. Sandman, 134 Misc. 456, 234 N.Y.S. 665, 667, where the performance of the contract never was commenced; Bacigalupi v. Phoenix Bldg. etc. Co., 14 Cal.App. 632, 637, 112 P. 892, where no damage was awarded for delay and the appellant merely claimed that the liquidated damage clause for delay prevented a recovery for the increased cost of completing the building.

Appellants argue that we are bound by the decision of a California District Court of Appeal in Sinnott v. Schumacher, 45 Cal.App. 46, 52, 53, 187 P. 105. There the contractor had abandoned the contract and, while the fact does not appear on the face of the opinion, actual damages. for delay were allowed in lieu of the liquidated amount. In that case there was a petition for hearing by the Supreme Court of the state, but not on this point. The decision is adverse to ours, but the court failed to consider the authorities and stated its mere conclusion without reasoning. The case is not persuasive, and we think was wrongly decided.

California is divided territorially into four judicial districts in each of which sits a District Court of Appeal, an intermediate appellate court. While there is conflict in these courts whether the decision of one is binding on another, Skaggs v. Taylor, 77 Cal.App. 519, 247 P. 218, Clover v. Jackson, 81 Cal.App. 55, 253 P. 187, the most recent case holds that one District Court of Appeal is not bound by the decision of another. People v. Brunwin, 2 Cal.App.2d 287, 37 P.2d 1072. However this may be, a decision of the intermediate court is not binding on the Supreme Court of the state even where the latter denies a petition for hearing. People v. Rabe, 202 Cal. 409, 261 P. 303.

This court is no more bound to follow a decision of a District Court of Appeal than is the court of last resort of the state. Our position here, in a case where the point at issue has not been decided by the highest California court, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, Lyon v. Mutual Benefit Health & Acc. Ass'n, 305 U.S. 484, 489, 59 S.Ct. 297, 83 L.Ed. 303, is that we have been substituted for the California Supreme Court as the appropriate court of appeal, and that it is our duty to apply the California law as the Supreme Court of the state would apply it on an appeal there. Wichita Co. v. City Bank, 306 U.S. 103, 107, 59 S.Ct. 420, 83 L.Ed. 515. In the performance of that function we may regard the decision of an intermediate appellate court as persuasive, but it is not controlling. Security First Natl. Bank v. United States, 9 Cir., 103 F.2d 188, 190; Russell v. Todd, 60 S.Ct. 527, 84 L.Ed. ——, decided February 26, 1940.

Appellants assert that the contract itself (Article 5) fixed the measure of damages and established the procedure to be followed by the District in completing the work; and that in its cross complaint the District did not allege compliance with this procedure or claim damages in conformity with the article.[7] The clause, it is said, required the District to complete the

---

[7] Article 5, so far as material, reads as follows: "The [Contractor] agrees that if the work to be done under this contract * * * shall be abandoned, or if this contract shall be assigned by the [Contractor], or if at any time the District Engineer shall be of the opinion, and shall so certify in writing to the said [District] that the said work or any part thereof is unnecessarily or unreasonably delayed, or that the said [Contractor] is wilfully violating any of the conditions of this contract, or is executing this contract in bad faith, the said [District] shall have the power to notify the [Contractor] to discontinue all work or any part thereof under this contract, and thereupon the said [Contractor] shall cease to continue said work or such part thereof as said [District] may designate, and the said [District] shall thereupon have the power to place such and so many persons, and to obtain by contract, purchase or hire, such animals, carts, wagons, implements, tools, material or materials, by contract or otherwise, as said [District] may deem advisable, to work at and be used to complete the work herein described, or such part thereof as the agent authorized to superintend the same may deem necessary, and to use such material as they may find upon the line of said work and to charge the expense of such labor and material, ani-

project with its own forces and did not authorize a re-letting. Also, it required the District, upon completion of the work, to audit the expenses incurred and cast a balance; whereupon the District was obliged to give notice before any liability for an unfavorable balance would accrue.

In response to this argument, the District denies that it was under any obligation to proceed in conformity with the terms of the article.

■ So far as concerns the District, the provisions of the article are plainly optional. The Contractor agrees that the District "shall have the power" to complete the work in the manner indicated. The latter did not promise to follow the procedure, nor agree to relinquish its right, under general law, to let new contracts and hold the Contractor for damages. Board of Education v. Md. Casualty Co., 3 Cir., 27 F.2d 20; City of Reading v. United States Fidelity & G. Co., supra. Cf. United States v. United States Fidelity & G. Co., 236 U.S. 512, 35 S.Ct. 298, 59 L.Ed. 696; Prudence Co. v. Fidelity Co., 297 U.S. 198, 56 S.Ct. 387, 80 L.Ed. 581. Nor, having re-let the work for a definite sum, was the District obliged to await its completion before bringing suit to recover its damages. Bacigalupi v. Phoenix Bldg. Co., supra; United States v. United States Fidelity & G. Co., supra; Board of Education v. Md. Casualty Co., supra; City of Reading v. United States Fidelity & G. Co., supra.

If we assume, contrary to the interpretation of the parties themselves, that the language of Article 5 is broad enough to authorize the District to proceed, as it did, by re-letting the work to other independent contractors, still the stipulated mode of assessing damages was not compulsory. It is plain that the prescribed method was to become operative only in the event the District, by serving the stipulated notice, should elect to cause the Contractor to discontinue and itself take over the work. No such notice was in fact given. What the District did was to notify the Contractor that, unless the latter resumed work within three days, the District would proceed to complete it and hold the Contractor and its bondsmen liable for any cost in excess of the contract price and "any and all damages to this District by reason of your wilful abandonment of the work."

■ There is another interpretation of the article which entirely eliminates it from consideration. Read as a whole, it appears to contemplate contingencies in which the District may take the initiative and compel the Contractor to discontinue the work, in whole or in part. In National Contracting Co. v. Hudson River W. P. Co., 118 App.Div. 665, 103 N.Y.S. 641, a substantially identical clause was held inapplicable in a situation where, as here, the builder wrongfully abandoned the contract and quit the work of its own motion. This holding was cited with approval in Bacigalupi v. Phoenix Bldg. Co., supra. See also 17 C.J.S.Contracts pages 1095, 1096, § 512; George A. Fuller Co. v. Doyle, C.C., 87 F. 687.

In any event, we are satisfied that the article was not intended as a limitation upon the rights of the District, but rather as an enlargement of them.

Other points have been argued. We have considered all of them and find no error warranting a reversal.

Affirmed.

---

mals, carts, wagons, implements and tools to the [Contractor], and the expense so charged shall be deducted and paid by the [District] out of such moneys as may be either due or may at any time thereafter become due to the said [Contractor] under and by virtue of this contract or any part thereof. In case such expense is less than the sum which would have become payable under this contract, if the same had been completed by the said [Contractor], the said [Contractor] shall be entitled to receive the difference, and, in case such expense shall exceed the last said amount, then the said [Contractor] or its bondsmen shall pay the amount of such excess to the [District] on notice from the said [District] of the excess so due."