[No. 14434.  Department Two.  May 9, 1918.]

SMITH SAND & GRAVEL COMPANY, *Appellant,* v. D. C. CORBIN, *Respondent.*[1]

PLEADING—AMENDMENTS — AFTER RETRIAL — COUNTERCLAIM AFTER ADMISSIONS.  Under Rem. Code, § 273, permitting a defendant to set forth as many defenses and counterclaims as he may have, and Id., § 303, authorizing the court to allow amendments, it is discretionary to allow amendments to an answer, upon retrial after remand from the supreme court.

SAME—AMENDMENTS — NEW DEFENSE — CONSISTENCY — CONSTRUCTION.  An amendment to an answer setting up a counterclaim for abandonment and breach of contract, not made on the former trials, is not inconsistent with the original answer admitting a specified sum as due for work done under the contract, and offering to submit to judgment therefor; since the amendment contained no denials of the original admissions.

DAMAGES—BREACH OF CONTRACT—MEASURE OF DAMAGES—COST OF PROCURING PERFORMANCE.  Where, upon breach of a contract for the removal of rock, the owner made a new contract on the same terms with a third party, who refused to carry it out because he was losing money, the owner had an election to hold the third party for damages or to make a new contract with him agreeing to pay him a greater sum; and having elected the latter, his measure of damages for the breach of the original contract was the reasonable and necessary expense of procuring completion of the work by another, which was the sum paid the third party, where it appears from the evidence that it was not unreasonably high and was a reasonable price.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered May 25, 1917, upon the verdict of a jury rendered in favor of the defendant, in an action on contract.  Affirmed.

*O. C. Moore,* for appellant.

*Allen, Winston & Allen,* for respondent.

CHADWICK, J. — The appellant began an action against respondent in the year 1912 to recover dam-

[1]Reported in 173 Pac. 16.

ages for breach of contract, setting forth in its complaint three causes of action. In the course of two trials in the lower court and two appeals to this court, all but the first cause of action was eliminated. On the third trial, the respondent was allowed by the trial court to amend his answer by setting up a counterclaim as an additional defense to the appellant's cause of action. A trial before a jury resulted in a verdict in favor of the respondent on his counterclaim in the sum of $1,330.13. From a judgment thereon, the appellant prosecutes this appeal.

The first contention of the appellant is, the cause having been twice tried and twice heard on appeal on *pro tanto* admissions as to the justice of appellant's claim, the respondent was estopped to amend his answer for the purpose of a third trial. The prior appeals did not involve any question upon the first cause of action and defenses thereto, hence we are not controlled by the doctrine of "law of the case." Nothing more is involved than the right to amend a pleading upon a retrial so as to present a new defense. The appellant founded his cause of action on the respondent's breach of a written contract under which appellant was to be paid fifty cents per cubic yard for the excavation and removal of rock from certain land owned by the respondent, payments to be made in monthly installments of ninety per cent as the work progressed, and ten per cent to be retained until final settlement. The appellant began the removal of the rock about August 1, 1909, but the work not proceeding with the diligence desired by respondent, he gave various notices, between October 3, 1910, and March 24, 1911, to appellant to remove his equipment, charging the contract had come to an end by lapse of time. The contract itself set no time for performance and was, accordingly, subject to the rule of reasonable time. The respondent having

taken possession of the land and prevented the appellant from carrying on its contract, the appellant brought an action to recover damages for its alleged breach, setting up that it had actually earned $4,468.40, on which it had been paid $1,279.80, leaving a balance due for rock theretofore excavated in the sum of $3,-188.60. The respondent admitted the sum of $1,352.70 to be due the appellant and offered to submit to a judgment for that amount.

After the cause had been twice tried on this issue, and remanded for new trial after appeal by reasons of errors on other phases of the case, the respondent interposed a counterclaim, setting up that he had been compelled to employ another contractor to do the work at an expenditure of $9,133.33, for which he demanded judgment against appellant. The appellant argues that the act of the respondent in going to trial, admitting in the answer indebtedness on his part, estops him from setting up a new defense on a retrial which virtually nullifies his prior admissions. While it is the rule that an answer containing admissions is not amendable so as to deny the admissions, such a question is not presented here. The amendment interposed by the respondent contains no denial of the admissions in his former answer, but merely sets up a counterclaim which, to the extent that it might be established, would operate by way of set-off, or possibly by way of judgment over, as against any right of recovery established by appellant on its cause of action.

Our statute (Rem. Code, § 273), permits a defendant to "set forth as many defenses and counterclaims as he may have," whether legal or equitable; and Id., § 303, authorizes the court to allow amendments to pleadings, a matter that we have repeatedly held as within the discretion of the court, whose action will be set aside only upon a showing of abuse of discretion.

That such amendments are permissible on a retrial upon remand from the supreme court is a well recognized rule in this state. *Jones v. Western Mfg. Co.,* 32 Wash. 375, 73 Pac. 359; *Interstate Savings & Loan Ass'n v. Knapp,* 20 Wash. 225, 55 Pac. 48, 931. The defenses set up are not objectionable as being inconsistent, but are such as the law allows. The only inconsistency was the action of the respondent in proceeding to trial on one defense when he had another that he might have interposed at the same time. Whether the omission of this defense was due to motive or oversight is immaterial. There was no element of estoppel which would preclude his asserting any valid defense at any stage of the proceedings, provided due notice and opportunity to meet it were given to the adverse party.

The next contention of appellant is addressed to the alleged error of the court in admitting certain evidence in support of the respondent's counterclaim.

The record shows that, after the respondent had rescinded his contract with appellant because of the latter's breach, he entered into a new contract with one Margolius to complete the work remaining unperformed by the appellant. The Margolius contract was a written one, stipulating for the same rate of pay as provided by the contract with the appellant. Margolius entered upon the performance of the contract, but later threatened to abandon it because he was losing money. The respondent thereupon made a new arrangement with Margolius to continue the work and agreed to pay him the actual cost. The rock removed by Margolius, according to the original contract price of fifty cents per cubic yard, would have been worth $6,450.50, but the amount paid by respondent to Margolius under the terms of their altered contract was $9,133.33, being $2,682.83 more than it would have cost

under the contract between appellant and respondent.

The appellant claims that the respondent had a valid, enforceable contract with Margolius for the sum of $6,-450.50, that any payment in excess of that sum was a voluntary payment, hence such excess payment was not chargeable as a natural consequence of appellant's breach of contract, and the admission of such excess in evidence and the submission of that item to the jury was error. In arriving at their verdict the jury took into consideration this excess payment of $2,682.83 more than appellant would have been entitled to for the completion of its contract, deducted therefrom the sum of $1,352.70, which the respondent had admitted as justly due the appellant, leaving a balance of $1,330.13, for which they rendered their verdict. If, under the law, the excess payment of $2,682.83 over the contract price was a voluntary one, its submission to the jury was erroneous. The only damages recoverable on a breach of contract are such as arise directly and unavoidably from the breach. Under the original contract between appellant and respondent the completion of the work as contracted for would have cost the respondent $6,450.50 in addition to the sum previously earned by the appellant. The contract between the respondent and Margolius called for a continuance of the work at the same price. Margolius refused to carry out the contract because it was a losing one to him. The respondent had his remedy on the contract of the third party to hold him for damages of the same character as his remedy against appellant. But respondent elected to make a new contract with Margolius, promising to pay him a greater sum. As between these two it was a valid contract, as recognized by our decision in *Evans v. Oregon & Washington R. Co.*, 58 Wash. 429, 108 Pac. 1095, 28 L. R. A. (N. S.) 455. But what effect would such a contract, though valid and

binding on the respondent, have as against the rights of the appellant to have his liability for damages minimized to such amount as were necessarily expended by the respondent as a natural and probable consequence of appellant's breach? The respondent's measure of damages for appellant's breach of contract through failure to perform was the reasonable and necessary expense of procuring completion of the work by another. The rule is stated in Sutherland on Damages (4th ed.), § 91, as follows:

"On the failure of a contractor to finish his contract the employer may cause it to be done by others and the reasonable sum required to be paid therefor may be recovered of the delinquent party. . . . A party to a contract which has been broken by the other has a right to fulfill it for himself, as nearly as may be, but he must not do this unreasonably as regards the other party, nor extravagantly, but he may expend such sum as will give him what he was entitled to under his contract though that be more than the price for which the contractor was to have done the work."

As to what would be evidence of the reasonable value of completing unfinished work, the rule is stated in Sedgwick on Damages (9th ed.), § 618, as follows:

"If, however, the completion of the contract is actually secured by the plaintiff, the amount paid by him for such completion is, if reasonable, the best evidence of the value or cost of performance, and it is therefore *prima facie* to be taken as the value of performance; but it is always open to the defendant to show that the amount paid was greater than reasonable."

See, also, *National Contracting Co. v. Hudson River Water Power Co.*, 118 App. Div. 665, 103 N. Y. Supp. 641; *Anderson v. Nordstrom*, 60 Minn. 231, 61 N. W. 1132; *Nichols v. Superior*, 109 Wis. 643, 85 N. W. 428.

If the sum expended by the respondent above the original contract price was reasonable and necessary

under the circumstances, he would be entitled to counterclaim for such excessive expenditure. There is no direct evidence in the record as to whether such expenditure was or was not reasonable, other than that of expert witnesses that such work was worth from seventy to ninety cents per cubic yard. The price paid Margolius was about seventy-one cents. While some presumption arises that fifty cents per cubic yard was a reasonable price for removing the rock, from the fact that two contracts at that price had been entered into, there is a countervailing presumption arising from the fact that the substituted contractor threatened to abandon the work for inadequacy of compensation and was induced to finish it on the respondent's promise to reimburse him for his actual expenses whatever they should amount to. There was some evidence that the appellant contemplated realizing a profit upon a sale of crushed rock in addition to the price obtained for the actual work of removal. The fact that the appellant could afford to do the work for fifty cents per cubic yard because of an opportunity for a side profit lends color to the claim of Margolius that fifty cents per yard was not an adequate price for the removal of the rock, and justifies the agreement between him and respondent for an increased payment. That this increased payment was unreasonably high does not appear from the record, but rather it appears from what evidence there was on the subject to have been a reasonable price. In such event, the total price paid by respondent to Margolius was a proper offset against any claim of appellant, irrespective of any question of the payment having been made voluntarily or under duress.

There was conflicting evidence on all issues in the action, and these issues having been submitted to the jury on proper instructions, the verdict is conclusive.

We find no merit in the exceptions to the giving and refusal of instructions.

The only question remaining is as to whether any of the testimony objected to by appellant was erroneously admitted. A reading of the abstract of record satisfies us that no reversible error was committed in the admission of the testimony to which exceptions were taken by the appellant. The judgment of the trial court is affirmed.

ELLIS, C. J., HOLCOMB, WEBSTER, and MOUNT, JJ., concur.