[No. 49208–5. En Banc. August 31, 1983.]

CROWN CASCADE, INC., *Respondent,* v. ART O'NEAL, ET AL, *Appellants.*

[redacted]

*Patrick D. Sutherland, Prosecuting Attorney,* and *Robert D. Tobin, Deputy,* for appellants.

*Thompson, Krilich & La Porte, P.S.,* by *Thomas G. Krilich,* for respondent.

DORE, J.—Thurston County appeals the trial court's ruling that RCW 58.17.210 requires a county to issue building and development permits to innocent purchasers of lots which were created in violation of the state and local subdivision laws. We affirm the trial court's issuance of a writ of mandamus, as discussed below.

## I

In July 1974, Thurston County adopted large–lot–subdivision ordinance 18.28 pursuant to RCW 58.17.040(2). The ordinance requires a developer of land to obtain approval of a proposed division of land before selling lots.

After the adoption of this ordinance, approximately 25 lots were sold within a land development which the developer named "Double Brook Estates". The division of land and sale of lots occurred without obtaining County subdivision approval and, as such, were illegal. Two of the illegal lots were sold to Dale Dunlap who, in turn, sold the lots in 1981 to David Gourley, who transferred the lots to plaintiff Crown Cascade. The plaintiff acquired the lots without actual knowledge that the lots were illegally created, and is unarguably an innocent purchaser. Crown Cascade subsequently sold each of the lots to a different purchaser, one of whom rescinded the contract upon learning of County policy that it would not automatically issue building and other development permits for illegally created lots.

This action was commenced in Thurston County Superior Court, with Crown Cascade seeking a declaratory judgment and writ of mandamus directing the County to issue

building and development permits to the plaintiff for the last two "Double Brook Estates" lots it owns. Upon an agreed statement of facts, the court conducted a hearing and granted the relief requested. A judgment and writ of mandamus were entered in December 1982. The writ of mandamus issued by the court provides:

> Now, THEREFORE, The above–named defendants are hereby commanded to issue building permits, septic tank permits, or other development permits to plaintiff, or plaintiff's purchasers, for the property described on Exhibits A and B attached hereto, upon compliance by the plaintiff, or its purchasers, with all relevant state laws and county ordinances, exclusive of RCW 58.17 and the county ordinances enacted subsequent thereto.

The appeal reaches this court on direct accelerated review.

## II

This case involves an interpretation of the meaning of RCW 58.17.210, which provides in full as follows (each sentence has been numbered for ease of subsequent reference):

> ■ No building permit, septic tank permit, or other development permit, shall be issued for any lot, tract, or parcel of land divided in violation of this chapter or local regulations adopted pursuant thereto unless the authority authorized to issue such permit finds that the public interest will not be adversely affected thereby. ■ *The prohibition contained in this section shall not apply to an innocent purchaser for value without actual notice.*
> ■ *All purchasers' or transferees' property shall comply with provisions of this chapter* and each purchaser or transferee may recover his damages from any person, firm, corporation, or agent selling or transferring land in violation of this chapter or local regulations adopted pursuant thereto, including any amount reasonably spent as a result of inability to obtain any development permit and spent to conform to the requirements of this chapter as well as cost of investigation, suit, and reasonable attorneys' fees occasioned thereby. ■ Such purchaser or transferee may as an alternative to conforming his property to these requirements, rescind the sale or transfer and recover costs of investigation, suit, and reasonable attorneys' fees occasioned thereby.

(Italics ours.)

The claimed inconsistency between the second and third sentences of the statute apparently occurred at the time the statute was amended in 1974. Prior to that amendment, the third sentence referred to "[a]ll *other* purchasers' or transferees' property". (Italics ours.) Laws of 1969, 1st Ex. Sess., ch. 271, § 21, p. 2569. Under the original enactment, only noninnocent purchasers needed to comply with RCW 58.17. In 1974, the House of Representatives proposed a bill to delete the entire second sentence and the word "other" in the third sentence. This would have made development permits unavailable for all illegally subdivided land, whether or not the purchaser was innocent. The Senate amended the bill to restore the second sentence providing that the prohibition shall not apply to an innocent purchaser for value without notice, but left unaltered the House amendment to the third sentence. Senate Journal, 43d Legislature (1974), at 500. The bill eventually passed as amended by the Senate. Laws of 1974, 1st Ex. Sess., ch. 134, § 10, p. 376.

The County contends that the second and third sentences are obviously ambiguous, and should be construed to give effect to the overall purpose of RCW 58.17, which is to ensure that subdivisions are planned so as to promote the public welfare. Essentially, the thrust of RCW 58.17.210 is "the protection of the public at large and innocent purchasers for value against violations of the platting statute". *Sienkiewicz v. Smith,* 97 Wn.2d 711, 715–16, 649 P.2d 112 (1982). The County contends allowing unregulated subdivisions to be constructed simply by transferring the lots to innocent purchasers subverts this purpose. To further the purpose of the chapter, the County argues it is necessary to construe the 1974 amendment as impliedly repealing the innocent purchaser's exemption. The County emphasizes that innocent purchasers may still obtain development permits under the first sentence of RCW 58.17.210 if the public interest would not be adversely affected thereby. The County currently encourages innocent purchasers to partic-

ipate in public hearing procedures conducted by the Board of County Commissioners. If the Board, in its discretion, finds the public interest would not be adversely affected, the innocent purchaser is then issued a development permit. Under the third and fourth sentences of RCW 58.17-.210, innocent purchasers may recover damages from the seller or rescind the sale.

The issue of whether a municipality could deny a building permit to an innocent purchaser of an illegally subdivided lot was addressed in *State ex rel. Craven v. Tacoma,* 63 Wn.2d 23, 385 P.2d 372 (1963). In that case, Craven was the purchaser of a lot in a subdivision which had not received approval from the City of Tacoma. When Craven applied for a building permit, the City denied the permit, solely on the ground that his predecessor in title had not complied with the City's subdivision ordinance. Craven applied for a writ of mandamus, which was denied in the trial court. In reversing the lower court decision, this court cited former RCW 58.16.100, stating:

> But the statute does not suffer the city to visit the sins of the grantor upon the grantee. Both the provisions for fixing a penalty and granting injunctions in the foregoing statute are directed against the owner of land, or his agent, who transfers or sells it before the plat or map of the subdivision in which it lays has been approved. They are not directed against a bona fide purchaser, and failure of the grantor to comply with the platting statutes and ordinances does not give the city grounds to refuse his bona fide grantee a building permit.
>
> . . .
>
> Our view, that the issuance of a building permit is a ministerial act for which mandamus will lie where compliance with the zoning regulations is shown, is supported by a quite similar case reported in *Munns v. Stenman,* 152 Cal. App. (2d) 543, 314 P. (2d) 67.

*Craven,* at 26–27.

█ RCW 58.17 contains more than 30 sections. The critical one in the case at bar is RCW 58.17.210, the first sentence of which provides that no building permit *shall* be issued for any lot divided in violation of this *chapter* or

local regulations adopted pursuant thereto. This language is clearly unambiguous and, when considered by itself, appears in conflict with *Craven.* The prohibition provided in the first sentence, however, is clearly modified by the second sentence, which says:

> The prohibition contained in this *section* shall not apply to an innocent purchaser for value without actual notice.

(Italics ours.) Presumptively, the use of the word "shall" in the statute is imperative and operates to create a duty rather than to confer discretion. *Clark Cy. Sheriff v. Department of Social & Health Servs.,* 95 Wn.2d 445, 448, 626 P.2d 6 (1981).

■ In reading the first two sentences of RCW 58.17.210, it is quite clear that the Legislature intended to give municipalities the authority to deny building and other development permits for any lot which was illegally created, with the exception that the municipality could not deny permits to an innocent purchaser for value without actual notice. All other persons, including the original illegal subdivider and any of his grantees not falling in the very specific category of being "innocent purchaser for value without actual notice", would have no right to building permits.

The third sentence of RCW 58.17.210 does not create an ambiguity or a conflict with the second sentence. After having granted municipalities the authority to deny building permits for illegally created lots (in the first sentence), and after having carved out an exception to that general rule for the benefit of innocent purchasers for value without actual notice (the second sentence), the Legislature went on to provide, in the third sentence:

> All purchasers' or transferees' property shall comply with provisions of this *chapter* and each purchaser or transferee may recover his damages from any person, firm, corporation, or agent selling or transferring land in violation of this chapter or local regulations adopted pursuant thereto, including any amount reasonably spent as a result of inability to obtain any development permit and

spent to conform to the requirements of this chapter as well as cost of investigation, suit, and reasonable attorneys' fees occasioned thereby.

(Italics ours.)

Appellants argue that the third sentence is in direct conflict with the second sentence. The trial court correctly reasoned that any ambiguity is resolved through the use of the words "section" and "chapter" in the second and third sentences of the provision. The third sentence simply means that even though an innocent purchaser for value without actual notice may be entitled to a building permit, he, like all others, is subject to the overall requirements of the entire *chapter* regarding subdivision and platting. It is a very common practice for a person buying a divided parcel to further subdivide that parcel through short platting. The parcels in the case at bar (lots 54 and 55 of "Double Brook Estates") are each 5–acre lots. Even though respondent is entitled to building permits, it is not exempt from having to meet all of the requirements of the entire chapter in the event it proposes to further subdivide those 5–acre lots by short platting.

Here, the statutory language is plain and the statute is, therefore, not open to construction or interpretation. *Green River Comm'ty College v. Higher Educ. Personnel Bd.*, 95 Wn.2d 108, 113, 622 P.2d 826 (1980).

We hold that RCW 58.17.210, permitting denial of building permits for illegally created lots, specifically exempts the plaintiffs as innocent purchasers for value without actual knowledge. We further hold the third sentence of RCW 58.17.210 does not create an ambiguity or conflict with the second sentence.

We affirm.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., concur.