[No. 51357-1.   En Banc.   December 12, 1985.]

THE STATE OF WASHINGTON, *Petitioner,* v. DWAYNE EARL BARTHOLOMEW, *Petitioner,* PIERCE COUNTY SUPERIOR COURT, *Respondent.*

*William H. Griffies, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Chief Criminal Deputy,* for petitioner State.

*Timothy K. Ford,* for petitioner Bartholomew.

*Shawn A. Flood* (appointed counsel for appeal), *Kane, Vandeberg, Hartinger & Walker, P.S.,* and *G. Perrin Walker, Special Counsel,* for respondent.

DORE, J.—In December 1981, a jury convicted Dwayne Bartholomew of aggravated first degree murder and in a separate hearing the jury found no mitigating circumstances and sentenced him to death. The following November, this court affirmed the murder conviction, but invalidated the death sentence because of the unconstitutional admission of evidence, during the separate sentencing phase, regarding Bartholomew's previous criminal activity. *State v. Bartholomew,* 98 Wn.2d 173, 654 P.2d 1170 (1982) (*Bartholomew* I).

The United States Supreme Court vacated this judgment in *Bartholomew* I, and remanded this case in light of *Zant v. Stephens,* 462 U.S. 862, 77 L. Ed. 2d 235, 103 S. Ct. 2733

(1983). *Washington v. Bartholomew,* 463 U.S. 1203, 77 L. Ed. 2d 1383, 103 S. Ct. 3530 (1983). We affirmed our previous holding in *Bartholomew* I alternatively on state and federal constitutional grounds and remanded to the Pierce County trial court with the following statement:

> In deference to the view of the majority in our prior decision on the consequence of a reversal of the sentencing phase, this case is remanded to the trial court for a new sentencing hearing to consider anew whether to impose the death sentence.

*State v. Bartholomew,* 101 Wn.2d 631, 648, 683 P.2d 1079 (1984) (*Bartholomew* II).

On remand the Pierce County prosecutor decided not to seek the death penalty using a new jury sentencing phase. The prosecutor, instead, decided to have the trial court sentence the defendant to life imprisonment without parole. The prosecutor asserted that this court's holding in *Bartholomew* I and *Bartholomew* II deprived him of the evidence needed to rebut the mitigating circumstances, and therefore the defendant should receive the more lenient sentence.

The trial judge questioned the right of the prosecutor to decline to seek the death penalty at this time in the proceedings. The judge appointed special counsel to argue that the prosecutor lacked discretion to decide not to seek the death penalty. After argument, the judge denied joint motions by the prosecution and defense to enter a sentence of life imprisonment without parole. The trial court cited our mandate in *Bartholomew* II. The parties petitioned this court to grant recall and clarifications of the mandate or discretionary review. We denied this motion by an order dated December 4, 1984.

Further proceedings were held before the Pierce County trial court at which the prosecution, defense, and special counsel argued as to whether the prosecution should proceed with the sentencing hearing. The trial court determined that a sentencing hearing must take place. The parties again petitioned this court for discretionary review,

which was granted.

## ISSUE

The issue now before this court is whether the prosecuting attorney, after the penalty phase of an aggravated murder has been remanded to the trial court for a new jury deliberation solely on the death penalty issue, has the authority to commute defendant's sentence to life without the possibility of parole and bypass the jury and penalty phase of the trial.

## ANALYSIS

■■ There are two provisions in the aggravated first degree murder statute that directly answer the question posed to us by this appeal. First, RCW 10.95.050(1) states that

> If a defendant is adjudicated guilty of aggravated first degree murder, . . . by verdict of a jury, . . . *a special sentencing proceeding shall be held* if a notice of special sentencing proceeding was filed and served as provided by RCW 10.95.040. No sort of plea, admission, or agreement may abrogate the requirement that a special sentencing proceeding be held.

(Italics ours.) Here, both requirements were met: the prosecutor properly had filed a notice that he would seek the death penalty and a jury found the defendant guilty of aggravated first degree murder. In such instances the statute mandates that a special sentencing proceeding take place and it gives the prosecutor neither the power nor the discretion to short circuit the penalty phase of the proceeding. In fact, the statute specifically precludes any agreement on the part of the prosecution and defense which would "abrogate the requirement that a special sentencing proceeding be held." RCW 10.95.050(1). The jury is given the exclusive right to determine whether the defendant will live or die based on mitigating circumstances.

The second provision of the statute which is dispositive as to this issue is RCW 10.95.050(4) which provides in part:

> *if a retrial of the special sentencing proceeding is necessary* for any reason including but not limited to a mis-

*trial in a previous special sentencing proceeding or as a consequence of a remand from an appellate court, the trial court shall impanel a jury of twelve persons plus whatever alternate jurors the trial court deems necessary.*

(Italics ours.) This section shows that the Legislature anticipated the issue presented by this case and provided a remedy for it. The statute is clear, unambiguous, and requires that the trial court impanel a jury to decide the proper penalty after a remand on the death penalty question. The prosecutor has no discretion to determine unilaterally that the lesser penalty be imposed.

There is no question but that the above cited sections of the statute are mandatory, and that the jury must be impaneled to decide the death penalty upon remand. The applicable statute uses the words "the trial court shall impanel a jury". The general rule is that the word "shall" is presumptively imperative and operates to create a duty rather than conferring discretion. *Crown Cascade, Inc. v. O'Neal,* 100 Wn.2d 256, 668 P.2d 585 (1983). It is only where a contrary legislative intent is shown that "shall" will be interpreted as being directory instead of mandatory. *Northwest Natural Gas Co. v. Clark Cy.,* 98 Wn.2d 739, 658 P.2d 669 (1983). Here, there is nothing in the statute which indicates that the Legislature did not intend to make the holding of the special sentencing proceeding mandatory when the two conditions were satisfied. Indeed, the Legislature used the word "shall" 67 times in RCW 10.95 while using "may" 15 times. This indicates that the Legislature intended the two words to have different meanings: "may" being directory while "shall" being mandatory. *See State v. Huntzinger,* 92 Wn.2d 128, 594 P.2d 917 (1979).

To allow the prosecution this discretion in a death penalty case absent specific statutory guidance could also give an unconstitutional delegation of authority to the prosecutor. *See State v. Martin,* 94 Wn.2d 1, 614 P.2d 164 (1980). The prosecutor does have discretion to decide whether to seek the death penalty at the charging phase of a case pur-

suant to RCW 10.95.040(1). We have held this does not vest unconstitutional discretion with the prosecutor as the prosecutor must decide pursuant to the statute that sufficient mitigating circumstances to merit leniency do not exist. *State v. Campbell,* 103 Wn.2d 1, 25, 691 P.2d 929 (1984). The "discretion" the prosecutor possesses at the charging stage is narrowly focused. The prosecutor can only follow the statutory instructions.

In contrast, if the prosecutor can decide after trial whether to seek the death penalty, the prosecutor has unfettered discretion after a case is remanded for error in the penalty stage. No statute exists to give him any guidance whatsoever in administering such power. Consequently, the prosecution would have the power to refuse to take the case to the jury even though the defendant has already been convicted of aggravated first degree murder. Since no guidelines would control the prosecution's decision, it is possible under a factual situation that two defendants, who are convicted of aggravated first degree murder and who have their cases remanded on appeal due to error in the sentencing phase, can, on remand, be subject to different dispositions of their cases. The prosecutor, quite arbitrarily, can decide to take one case to a new sentencing jury while refusing to do the same with the other. Consequently, two defendants, in identical situations, may have their penalties decided differently because the prosecutor has unbridled discretion as to how each will be treated. This clearly violates the Fourteenth Amendment's equal protection clause. *State v. Zornes,* 78 Wn.2d 9, 475 P.2d 109 (1970).

Furthermore, if the prosecutor has unfettered discretion at this stage of the proceedings, it would permit him to usurp the jury's role. It is the jury, especially in capital cases, that maintains "a link between contemporary community values and the penal system—a link without which the determination of punishment could hardly reflect 'the evolving standards of decency that mark the progress of a maturing society.'" *Witherspoon v. Illinois,* 391 U.S. 510,

519 n.15, 20 L. Ed. 2d 776, 88 S. Ct. 1770 (1968), quoting *Trop v. Dulles,* 356 U.S. 86, 101, 2 L. Ed. 2d 630, 78 S. Ct. 590 (1958). The community should decide whether death is the appropriate punishment for a defendant. The jury, and not the prosecutor, far better represents the community. The community should have its chance to weigh the mitigating factors in the case. The prosecutor should not take the decision on mitigation away from the jury. While we find no harm in allowing the prosecutor to express his own personal view to the jury that the defendant should receive mercy, the jury, and not the prosecutor, must make the ultimate decision, subject to automatic review by this court. RCW 10.95.100.

## Conclusion

Because we believe that the jury is better suited for determining a defendant's sentence in a capital case, and because the statute is clear that after remand a new jury *must* be impaneled to determine an appropriate sentence, we remand this case with instructions that the prosecutor present this case to a sentencing jury for trial of the penalty phase of this case. The prosecution has no right, statutory or constitutional, to usurp the jury's functions to determine *mitigation* in this case, and make the decision whether the defendant should live or die. The prosecutor does have the right to appear before the jury and ask for mitigation and the sparing of defendant's life. The final decision, however, will rest with the jury, subject to review by this court.

BRACHTENBACH, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

DOLLIVER, C.J. (dissenting)—I believe the Pierce County Prosecuting Attorney does have the discretion not to proceed with the death penalty after the remand of *Bartholomew* II (*State v. Bartholomew,* 101 Wn.2d 631, 683 P.2d 1079 (1984)).

The majority makes three arguments to justify its position: (1) The statute mandates its result; (2) to hold other-

wise would be an unconstitutional delegation of authority to the prosecuting attorney; and (3) a contrary view would permit the prosecuting attorney to usurp the role of the jury.

## I

The majority states the definitive statute is RCW 10.95-.050(4), which reads:

> *if a retrial of the special sentencing proceeding is necessary* for any reason including but not limited to a mistrial in a previous special sentencing proceeding or *as a consequence of a remand from an appellate court, the trial court shall impanel a jury of twelve persons plus whatever alternate jurors the trial court deems necessary.*

Majority opinion, at 847–48.

As the majority points out, the language of the statute is mandatory. This, however, is not the issue. The issue is whether "a retrial of the special sentencing proceeding is necessary". The analysis of the majority, while accurate, simply begs the question. A retrial of the special sentencing proceeding is "necessary" only if under the circumstances in the case the prosecuting attorney must proceed with the special sentencing proceeding. There is no such requirement in the statute. Indeed, for the prosecuting attorney to proceed in this case with the special sentencing proceeding would violate the statutes and the holdings of this court.

On remand from an appellate reversal, parties generally have the freedom to amend their pleadings. *Johnson v. Berg,* 151 Wash. 363, 275 P. 721 (1929); *Smith Sand & Gravel Co. v. Corbin,* 102 Wash. 306, 173 P. 16 (1918). After reversal, and in the absence of special direction, a case remanded stands in the same position as before the original trial. *Stusser v. Gottstein,* 187 Wash. 660, 664, 61 P.2d 149 (1936), *overruled on other grounds in Greene v. Rothschild,* 68 Wn.2d 1, 6, 402 P.2d 356, 414 P.2d 1013 (1965). This rule has been held to apply to criminal cases to the same extent as civil cases. *People v. Chadd,* 28 Cal. 3d 739, 621 P.2d 837, 848, 170 Cal. Rptr. 798 (1981); *State v.*

*Ansell,* 36 Wn. App. 492, 675 P.2d 614 (1984).

Unimpeded amendment of pleadings is the usual rule in criminal procedure. *See* CrR 2.1(d). There is, moreover, nothing in the death penalty statute which is inconsistent with this court rule. *See* RCW 10.95.010. Without express statutory authority to the contrary, the prosecution should have the discretion to amend its pleadings in death penalty cases remanded due to error occurring in the sentencing phase.

A comparison of the nature of the prosecutor's decision at the preguilt trial stage with that at the post–guilt trial remand stage demonstrates that the decision is really the same. In *State v. Campbell,* 103 Wn.2d 1, 691 P.2d 929 (1984), we held the decision of the prosecutor to file a notice of intention to seek the death penalty did not invade upon, but rather shares, the sentencing powers of the judicial branch. *See also State v. Dictado,* 102 Wn.2d 277, 687 P.2d 172 (1984).

While defendant's ultimate punishment is implicated by the prosecutorial decision to seek death, the decision is more a "charging" decision than a "sentencing" decision since the basic question the prosecution is asked to make is simply whether sufficient evidence exists to take the issue of "mitigating evidence" to the jury. *Campbell,* at 26; *Dictado,* at 297–98. The jury and not the prosecutor ultimately determines the defendant's punishment. *Cf. State v. Haner,* 95 Wn.2d 858, 631 P.2d 381 (1981) (prosecutor does not have unilateral discretion to approve plea bargain since pleas come within the judicial sphere). (*Haner* is distinguishable in that the present case is not a plea bargain to which the defendant will plead guilty in exchange for a lesser charge. Rather, the State asserts it has insufficient evidence to prove its case at sentencing. *Haner* is also inapplicable since its rationale—the amendment of an information is not analogous to the initial decision to prosecute (*Haner,* at 863)—is inconsistent with what the court has defined as the prosecutor's role in seeking the death penalty, *e.g.,* to determine whether there is sufficient evi-

dence to take the punishment of death to the jury. The exercise of this function does not intrude upon the sentencing function. *Campbell,* at 26.)

The "charging" decision made by the Pierce County Prosecutor upon remand in this case is indistinguishable from the charging decision made prior to the preguilt trial stage upheld in *Campbell.* Prosecutors intending to seek the death penalty are asked by the statute whether they have reason to believe there are sufficient mitigating circumstances to merit leniency. RCW 10.95.040(1). The Pierce County Prosecutor faces the same charging decision in the present case since as a result of this court's decision in *Bartholomew* I (*State v. Bartholomew,* 98 Wn.2d 173, 654 P.2d 1170 (1982)) and *Bartholomew* II there is now considerably less evidence which may be admitted. For example, since evidence of defendant's prior criminal activities for which there are no convictions cannot be introduced (*Bartholomew* I, at 196–97), there may be no evidence suggesting he does not deserve leniency. Furthermore, defendant may introduce unstipulated polygraph tests which rebut the prosecution's characterization of the role of the defendant in the crime. *Bartholomew* II, at 646.

The prosecutor's "charging" power applies equally to cases, such as the present one, which are remanded due to error occurring in the sentencing process. In *State v. Pettitt,* 93 Wn.2d 288, 609 P.2d 1364 (1980), for example, the court ruled the Lewis County Prosecutor abused his discretion in prosecuting habitual criminals without first considering whether there were "mitigating circumstances". In remanding the case to the trial court, the court held the defendant must be resentenced "based on a recommendation reached through the exercise of prosecutorial discretion." *Pettitt,* at 296. *See also State v. Rinier,* 93 Wn.2d 309, 609 P.2d 1358 (1980) (case remanded to determine whether habitual criminal proceeding ought to be refiled).

Like the habitual criminal statute, the death penalty sentencing phase is a form of sentence enhancement. *See State v. Hennings,* 100 Wn.2d 379, 382, 670 P.2d 256

(1983). In both, certain "elements" must be proved beyond a reasonable doubt. *Compare State v. Murdock,* 91 Wn.2d 336, 588 P.2d 1143 (1979) (elements of habitual criminal statute must be proved beyond a reasonable doubt) *with* RCW 10.95.040(1) *and* RCW 10.95.060(4) (person convicted of first degree aggravated murder shall suffer death if prosecution proves absence of mitigating circumstances beyond a reasonable doubt). *See State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980). When the *Pettitt* court determined the evidence used to sentence defendant was unconstitutional, the court required the prosecutor to reevaluate Pettitt's criminal record in light of the new evidence. *Pettitt,* at 296. As in *Pettitt,* the present case is on remand from a sentencing error arising out of the admission of unconstitutional evidence. It is likewise appropriate to allow the prosecution the discretion to make the "mitigating" evidence decision.

Furthermore, although the purpose of the second phase of a death penalty bifurcated trial is sentencing, the penalty phase is analogous to a "new trial" to which prosecutorial discretion attaches. *See Bullington v. Missouri,* 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852 (1981). At issue in *Bullington* was whether the double jeopardy clause applied to the death penalty phase of Missouri's capital punishment scheme. In applying the double jeopardy clause to the penalty phase, a sentencing function to which the double jeopardy clause generally does not attach (*e.g., North Carolina v. Pearce,* 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969)), the Court reasoned the sentencing jury in the penalty phase of a capital trial was not

> given unbounded discretion to select an appropriate punishment from a wide range authorized by statute. Rather, a separate hearing [presented the jury with] a choice between two alternatives and standards to guide the making of that choice.

*Bullington,* at 438. The Court stressed it was the prosecution's duty to establish "certain facts beyond a reasonable doubt in its quest to obtain the harsher of the two alterna-

tive verdicts." *Bullington,* at 438. The Court noted:

> By enacting a capital sentencing procedure that resembles a trial on the issue of guilt or innocence, however, Missouri *explicitly requires* the jury to determine whether the prosecution has "proved its case."

*Bullington,* at 444. *Accord, State v. Hennings, supra* (double jeopardy clause attaches to separate sentencing proceeding in a habitual criminal action).

If the penalty phase is not "sentencing" for double jeopardy purposes, it should not be "sentencing" for purposes of prosecutorial discretion and the charging function. The common denominator is whether the evidence sought to be admitted is within the purview of sentencing, to which rigid constitutional evidentiary limitations do not apply (*see* M. Frankel, *Criminal Sentences* 38 (1973); Kadish, *Legal Norm and Discretion in the Police and Sentencing Processes,* 75 Harv. L. Rev. 904, 916 (1962)), or whether the evidence is presented in an adversarial manner, which is subject to constitutional evidentiary limitation. Since, for purposes of analyzing the prosecutorial charging function, the penalty phase resembles a trial, it should be subject to the traditional rule that elements proved at adversarial trials are subject to the prosecutor's charging discretion. Thus, the prosecutor's discretion, held to be a proper charging function in *State v. Campbell,* 103 Wn.2d 1, 691 P.2d 929 (1984), should apply to the same extent in the post–conviction, remand stage.

## II

The majority claims that although prior to the initial seeking of the death penalty the prosecutor must have "reason to believe that there are not sufficient mitigating circumstances to merit leniency" (RCW 10.95.040(1)), under the circumstances in this case, there would be "no guidelines" and hence the prosecutor would have "unfettered discretion". Majority opinion, at 849. I disagree.

In *State v. Dictado,* 102 Wn.2d 277, 297, 687 P.2d 172 (1984), the court stated:

Under RCW 10.95.040(1) the prosecutor must file a notice of a special sentencing proceeding to determine whether the death penalty is to be imposed "when there is reason to believe that there are not sufficient mitigating circumstances to merit leniency." The prosecutor's discretion to seek or not seek the death penalty depends on an evaluation of the evidence of mitigating circumstances. This evaluation must determine if sufficient evidence exists to convince a jury beyond a reasonable doubt that there are not sufficient mitigating circumstances. RCW 10.95.060(4).

In her appearance before the trial court, the Pierce County Deputy Prosecuting Attorney stated:

The *Campbell* case sets out that the decision to prosecute must be based on the prosecutor's ability to meet the proof required by the statute. It is not a matter of convincing a jury or not convincing a jury, but a legal determination of what proof could be placed before that jury prior to the argument.

In Bartholomew 2, the state Supreme Court, basically, eliminated the evidence that had been previously presented by the state to the jury on the penalty phase. We have to differentiate between the substantive phase for the aggravated murder and additional element of disproving mitigating circumstances, and sufficiency of those, which must be proved at the penalty phase, as set out in the *Campbell* case.

Basically, what Bartholomew 2 said, was that the state's evidence was restricted to the defendant's record of convictions—which is virtually nonexistent—the evidence of statutory aggravated factors, which was provided at the first trial, and whatever rebuttal evidence was necessary to rebut mitigating evidence, if offered, by the defendant, and evidence of the murder itself.

It is the state's position that it is its duty, and it has performed its duty, and has evaluated the evidence available as of now, and as of August, 1984. And that before a new penalty phase could be held, it would be necessary for the state to file a new notice of intent to hold such a hearing. That the notice of intent to hold such a hearing, which was previously filed back in 1981, was based on evidence then presented and then believed by that prosecuting attorney to be admissible. The

Supreme Court said, no, that evidence could not be relied upon. Therefore, we have a substantial change of circumstance between the exercise of discretion back in 1981 and the need to exercise discretion now. That changed circumstance is not a matter of policy, it is not a matter of feelings, and it is not a matter of some kind of amorphous view of justice or injustice. It is a legal determination of available evidence and its sufficiency.

Mr. Perrin (sic) tries to get this Court, and I think this Court believes incorrectly—and perhaps even counsel believes incorrectly—that the state's decision not to proceed with this hearing is based on some kind of plea bargain type of agreement. That is not the case. The decision was made purely based on the availability of evidence now. In the state's judgment it was not legally sufficient by which it could file an affidavit and go forward and request this Court to hold a hearing. There is no agreement, there is no bargain.

Mr. Walker is absolutely correct, and I am sure Mr. Ford knows, that the holding of this hearing does not in any way affect his rights to go back with other issues to the State Supreme Court or to the U. S. Supreme Court. Entry of this judgment and sentence should revive the time limits for petitions for writ of cert. to the Supreme Court, in any event.

A prosecutor's exercise of discretion must be based on its ability to meet the proof required by the statute; meet the proof required by that statute today, in January of 1985, not what it was back in 1981. Based on my knowledge of that, I've exercised my discretion to say, I cannot go forward. And I am asking this Court to enter the judgment and sentence, sentencing Mr. Bartholomew to life without possibility of parole.

As is clear from this statement, the decision not to recharge the death penalty was not done arbitrarily but was based on the exact "narrowly focused" (majority opinion, at 848) discretion which is used in the initial charging under RCW 10.95.040(1) and which has specifically been upheld by this court. The same guidelines apply under *any* circumstances in which a prosecutor determines whether to ask for the death penalty. The views of the majority comport neither with the facts of this case nor with the law.

There is no violation of equal protection. *State v. Dictado,* at 298. If any violations of equal protection could be claimed, they would be by someone in Bartholomew's position who, when the prosecutor determined there was not sufficient evidence to charge the death penalty, was still subjected to a special sentencing proceeding.

### III

Once it is demonstrated the prosecutor does not have "unfettered discretion", then the argument of the majority that the prosecutor would "usurp the jury's functions" (majority opinion, at 850) loses all its force.

The court cannot have it both ways: To assert one year the "prosecutor's discretion to seek or not seek the death penalty depends on an evaluation of the evidence of mitigating circumstances" (*State v. Dictado, supra* at 297, affirmed in the 1984 case of *State v. Campbell, supra* at 26) and then 12 months later claim the jury must make the decision. Of course, the jury has the function to determine mitigation; but the statutes and this court have specifically held the prosecuting attorney is the one who is entitled to make and must make the initial determination as to whether sufficient evidence exists to persuade the jury and, thus, whether the death penalty should be charged.

The prosecuting attorney can ask for the death penalty only if there is "reason to believe that there are not sufficient mitigating circumstances to merit leniency." RCW 10.95.040(1). If the prosecuting attorney believes evidence does not exist to convince a jury beyond a reasonable doubt that there are not sufficient mitigating circumstances (*see* RCW 10.95.060(4)), then the prosecuting attorney does not have the discretion to ask for the death penalty. As is made clear from the testimony of the deputy prosecuting attorney, there is reason to believe such evidence does not exist. Therefore, for the prosecuting attorney to ask for the death penalty again would not only be in contravention of the statute but also would raise serious constitutional issues. It is not the prosecuting attorney who has become "unfet-

tered" in this case but rather the majority which chooses to ignore the facts of the case, the statutes, and the recently adopted case law of the court.

I dissent.

UTTER and PEARSON, JJ., concur with DOLLIVER, C.J.

Reconsideration denied February 19, 1986.