IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　Respondent,<br><br>　　　v.<br><br>JEREMY WAYNE HIXSON,<br><br>　　　　　Appellant. | No. 83877-6-I<br><br>DIVISION ONE<br><br>ORDER GRANTING MOTION FOR RECONSIDERATION AND WITHDRAWING AND SUBSTITUTING OPINION |

Appellant filed a motion for reconsideration on July 7, 2023.  After review of the motion, a panel of this court has determined that the motion for reconsideration should be granted.  The panel has also determined that the opinion filed on June 20, 2023 should be withdrawn and a substitute opinion filed.

Now, therefore, it is hereby

ORDERED that the motion for reconsideration is granted; and it is further

ORDERED that the opinion filed on June 20, 2023 shall be withdrawn and a substitute opinion shall be filed.

FOR THE COURT:

_____

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83877-6-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| JEREMY WAYNE HIXSON, | |
| Appellant. | |

HAZELRIGG, A.C.J. — Jeremy Hixson appeals from a judgment and sentence entered after his guilty plea to one count of possession of stolen property in the second degree. He avers that the court finding that a motor vehicle was used in the commission of the crime, triggering suspension of his driver license by the Department of Licensing, is erroneous as it failed to apply the statutory definition as amended. Hixson further challenges both the imposition of community custody supervision fees and the victim penalty assessment. We agree, reverse, and remand for correction of the judgment and sentence.

FACTS

On July 22, 2021, the State charged Hixson with one count of organized retail theft in the second degree. According to the affidavit of probable cause,[1]

---

[1] The signed agreement of the parties, which was attached to the "Statement of Defendant on Plea of Guilty" and filed with the trial court, indicates Hixson's consent for the judge to review and consider the probable cause affidavit for the "[f]acts to be considered for imposing sentence." Accordingly, we similarly rely on those facts accepted by the parties and the judge.

Hixson and another individual entered a beauty store in Lynnwood and took various fragrances from the store without paying. The store manager reported the incident to police and provided a description of the people involved and the vehicle in which they left. The responding officer observed a car that matched the description provided and conducted a traffic stop. The officer identified Hixson as the driver and noted that several boxes of fragrances were on the floorboard, and that the passenger in the back seat had a number of alarm sensors from the store in their lap. On February 17, 2022, pursuant to a plea agreement with the State, Hixson entered a guilty plea to an amended charge of one count of possession of stolen property in the second degree.

On March 31, 2022, the court conducted a sentencing hearing where the only contested matter was whether the court should enter a finding that a motor vehicle was used in the commission of the offense, pursuant to RCW 46.20.285(4), which would result in the Department of Licensing (DOL) suspending Hixson's driver license for a period of one year. The State argued that such a finding was appropriate because the stolen property was located on the floorboard of the vehicle Hixson was driving. Hixson argued the vehicle merely served as a "mode of transportation," not as a necessary part of the crime, and the stolen property was not hidden or concealed within the vehicle. According to the trial court, "them being in the vehicle and then moving it away from the owner of that property who had a right to possess it does implicate the vehicle." Thus, the court found that the motor vehicle was used in the commission of the offense and checked the corresponding box on the judgment and sentence (J&S) to reflect the finding.

Both parties and the Department of Corrections (DOC) recommended a residential Drug Offender Sentencing Alternative[2] (DOSA). The trial court imposed the residential DOSA "with the conditions recommended" as well as the $500 victim penalty assessment (VPA),[3] but did not impose any discretionary fines or fees. The community custody section of the J&S included preprinted language buried within several paragraphs under the broad heading of "COMMUNITY CUSTODY" that required Hixson to "pay supervision fees as determined by DOC."

Hixson timely appealed.

ANALYSIS

Hixson avers the trial court erred in failing to apply the amended version of RCW 46.20.285(4), which became effective on January 1, 2022, and, therefore, the finding that a motor vehicle was used in the offense under the applicable statutory definition was also erroneous. Hixson further challenges the imposition of DOC community custody supervision fees based on his indigency at the time of sentencing and the subsequently amended version of RCW 9.94A.703. He also challenges the VPA as unconstitutionally excessive.

I.      Failure To Apply Current Version of Statute

Hixson argues that the trial court abused its discretion by failing to apply the correct version of the statute on the use of a motor vehicle in the commission of a

---

[2] RCW 9.94A.660.

[3] Criminal law practitioners, trial courts, and different panels of this court, have variously referred to the mandatory fee imposed pursuant to RCW 7.68.035 as the "victim penalty assessment," VPA, or "crime victim assessment," CVA. In briefing, the parties use VPA and we use their chosen language herein for consistency.

felony and, accordingly, that the corresponding finding on the issue was erroneous. We agree.

RCW 46.20.285 provides a list of offenses for which revocation of a driver license is required upon conviction. The statute dictates that the DOL,[4] "shall revoke the license of any driver for the period of one calendar year, unless otherwise provided in this section, upon receiving a record of the driver's conviction" of one of the listed offenses "when the conviction has become final." RCW 46.20.285. The previous version of RCW 46.20.285(4) required revocation based on "[a]ny felony in the commission of which a motor vehicle is used." (LAWS OF 2005, ch. 288, § 4) (emphasis added). However, our legislature amended RCW 46.20.285(4) and, as of January 1, 2022, a revocation based on this provision is limited to felonies wherein "a motor vehicle was used in a manner that endangered persons or property." (Emphasis added.)

Because trial courts have discretion with sentencing we review their decisions with deference and will only reverse a sentence based on a "clear abuse of discretion or misapplication of the law." State v. Elliott, 114 Wn.2d 6, 17, 785 P.2d 440 (1990). A trial court abuses its discretion when it "applies the wrong legal standard, or bases its ruling on an erroneous view of the law." State v. Lord, 161 Wn.2d 276, 284, 165 P.3d 1251 (2007). We review the underlying questions of law de novo. Id. Here, the plain language of RCW 46.20.285(4) requires the DOL to revoke a defendant's license upon conviction of a felony only in those circumstances "where the sentencing court determines that in the commission of

---

[4] RCW 46.04.162 clarifies that the term "department," as used in RCW 46.20.285, refers to the DOL.

the offense a motor vehicle was used in a manner that endangered persons or property."

Although the sentencing hearing took place nearly three months after the amended version of RCW 46.20.285(4) went into effect, the trial court did not apply it or appear to be aware of the changes to the statute. However, the court did express appreciation for precisely the concerns that likely led the legislature to amend the statute in the first place. In deciding the motor vehicle issue, the court stated:

> I do have to say that the legislature or the upper courts may want to rethink their revoking driver's licenses based on offenses like this where driving itself doesn't create a danger to the public, but I don't think that it's my place to do that. I understand that it can set someone back.
> And so it is certainly not with any joy that I find that this case does fit with Batten[5] and the license—I should not say that—I do find that the motor vehicle was used in the commission of the offense.

(Emphasis added.) On appeal, the State concedes that the trial court made its finding under the former version of RCW 46.20.285(4), which was no longer in effect at the time of Hixson's sentencing.

However, rather than acknowledging that this finding was improper and based on a misapplication of controlling authority, and thus an abuse of discretion, the State argues Hixson's assignment of error is not ripe for review as his license has not yet been suspended and, alternatively, that he cannot challenge the finding on appeal because the DOL is the entity responsible for revoking an individual's license and "[a]ny contention regarding what the DOL will do with the sentencing

---

[5] State v. Batten, 140 Wn.2d 362, 997 P.2d 350 (2000).

court's motor vehicle finding under the old version of RCW 46.20.285(4) is <u>pure speculation and conjecture</u> at present." This contention is meritless and directly at odds with the plain language of RCW 46.20.285, which provides that the DOL "<u>shall</u> revoke the license of any driver for the period of one calendar year unless otherwise provided in this section, upon receiving a record of the driver's conviction of any of the following offenses, when the conviction has become final." (Emphasis added.) As a general rule, "the word 'shall' is presumptively imperative and operates to create a duty rather than conferring discretion." <u>State v. Bartholomew</u>, 104 Wn.2d 844, 848, 710 P.2d 196 (1985). As nothing in this statute indicates the word "shall" was intended to be "directory instead of mandatory," we interpret it as the latter. <u>Id.</u>

The court abused its discretion as to this finding by not applying the version of the statute in effect at the time of sentencing, and controlling case law.[6] Accordingly, the J&S must be corrected.

---

[6] The State further asserts that the older version of the statute should apply because that was the version in effect at the time the crime was committed, and that the finding under that version was proper based on the facts. While the first contention is true, that the State must charge under the statute in effect at the time of the alleged criminal conduct, case law is clear that sentencing is distinct with regard to remedial statutes, which "are generally enforced as soon as they are effective, even if they relate to transactions predating their enactment." <u>State v. Pillatos</u>, 159 Wn.2d 459, 473, 150 P.3d 1130 (2007).

"A statute is remedial when it relates to practice, procedure, or remedies and does not affect a substantive or vested right." <u>Miebach v. Colasurdo</u>, 102 Wn.2d 170, 181, 685 P.2d 1074 (1984). The revocation of licenses by the DOL is a "remedial sanction and not criminal punishment." <u>City of Spokane v. Wilcox</u>, 143 Wn. App. 568, 572, 179 P.3d 840 (2008). As the provision and amendment at issue only relate to procedures, the amendment is remedial and was applicable at the time of sentencing. <u>See</u> <u>Pillatos</u>, 159 Wn.2d at 473. Because we have already determined that the application of the superseded version of the statute was an abuse of discretion, we need not entertain the State's additional argument that the trial court properly applied the former version.

II.     Community Custody Supervision Fees

Hixson also assigns error to the trial court's imposition of community custody supervision fees despite the fact that his attorney presented evidence of his indigency and the State agreed that only the mandatory victim penalty assessment should be imposed if the court concluded that Hixson was indigent. He contends the discretionary fees are improper in this case under both the former RCW 9.94A.703(2)(d) and the subsequently amended version of that statute. Hixson is correct on both points.

RCW 9.94A.703 provides a list of community custody conditions that are categorized as mandatory, waivable, and discretionary, along with special conditions that apply only under certain facts.   The former version of RCW 9.94A.703(2)(d), in effect at the time of Hixson's sentencing, included fees for the cost of supervision by DOC among the waivable conditions: "Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [DOC]."  LAWS OF 2022, ch. 29, § 7.   However, our legislature amended the statute, effective July 1, 2022, and struck that provision entirely.  Id.

Even under the former RCW 9.94A.703(2)(d), imposition of the community custody supervision fees here was error, likely a scrivener's error at that.  Under the former statute, because "'supervisory fees [were] waivable by the trial court, they [were] discretionary [legal financial obligations].'"  State v. Bowman, 198 Wn.2d 609, 629, 498 P.3d 478 (2021) (quoting State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020)).  "A sentencing court may not impose discretionary

costs on indigent defendants." State v. Pervez, 15 Wn. App. 2d 265, 280, 478 P.3d 103 (2020).

Hixson is indigent. Though the State makes much of the trial court's failure to make an express finding of indigency on the record, this argument ignores case law establishing that such a finding is unnecessary when the record demonstrates that the court intended to impose only mandatory LFOs. Dillon, 12 Wn. App. 2d at 152. In Dillon, we struck the imposition of community custody supervision fees, located deep within the J&S, in the section on community custody conditions. Id. Because the trial court had stated that it would only impose the $500 VPA, and the community custody condition that required Dillon to pay supervisory fees was "buried in a lengthy paragraph on community custody," we determined that the trial court intended to waive all discretionary LFOs and "inadvertently imposed the supervision fees because of its location in the judgment and sentence." Id.

The trial court in Dillon stated it was only imposing the VPA; the sentencing court here asserted the same. Further, just as in Dillon, the boilerplate language at issue here is buried in a lengthy paragraph on community custody conditions within the 16-page J&S. Defense counsel included a separate section on indigency in Hixson's sentencing memorandum and expressly asked the court to "only impose the mandatory court fees and fines of $500 [for the VPA]" on the basis of his indigency. The State's sentencing memorandum also addressed Hixson's indigency and asked that the court impose only the VPA and a $200 criminal filing fee as mandatory, but noted that the filing fee "may be waived if the court finds the

defendant indigent." The trial prosecutor reiterated the State's position orally at the sentencing hearing:

> As far as legal financial obligations go, there's a mandatory $500 victim assessment and a $200 filing fee <u>unless the defendant is found indigent, in which case we would waive the $200</u>.

(Emphasis added.) While the State is correct that the court never explicitly made a finding as to Hixson's indigency, the court clearly considered, and followed, the agreement of the parties in that regard. In imposing the sentence and accompanying legal financial obligations (LFOs), the court said, "So I'll impose the residential DOSA with the conditions recommended, and I'll impose the $500 crime victim fee. There was apparently no restitution." Later, the following exchange occurred:

> THE COURT: Otherwise, I believe that concludes everything. Would your client waive presence for signing?
>
> [DEFENSE]: He would. And I may have missed it, Your Honor, the financial obligations, I'm not sure if you—
>
> THE COURT: Yes. I may not have said it, but it was implied by the fact I only imposed the 500.
>
> [DEFENSE]: Thank you, Your Honor.
>
> THE COURT: Thank you. All right.

The record could not be clearer that all parties considered Hixson to be indigent and that, on that basis, the court did not impose the filing fee.

Accordingly, it is evident that, like the sentencing judge in <u>Dillon</u>, the trial court here overlooked the DOC supervision fee condition due to its location in the preprinted

language in the J&S.[7]  The footer on the J&S indicates that it was prepared by the

prosecutor's office.  Considering the number of times this court has addressed this

precise appellate issue in other opinions, it seems the simplest manner by which

to address the recurring error would be for the State to update the forms it presents

to the court at sentencing.[8]  Further, the State has now taken a position on appeal

---

[7] While the State cites the rule that written orders control over oral rulings in its brief, this was not a situation where the court ruled one way in its oral ruling at sentencing and then, in memorializing its ruling in a written order, used language that was contradictory; this is a matter of boilerplate language in a standardized form with facts nearly identical to those set out in Dillon.

[8] This Division alone has issued over 60 opinions since January 1, 2020 that reach this precise issue.  Of those opinions from this court, more than half of them were issued in cases arising from this same superior court where this same prosecutor's office represented the State. See State v. Dillon, 12 Wn. App. 2d 133, 456 P.3d 1199 (2020); see also State v. Meza, 22 Wn. App. 2d 514, 512 P.3d 608, review denied, 200 Wn.2d 1021 (2022); see also State v. Greenfield, 21 Wn. App. 2d 878, 508 P.3d 1029 (2022); see also State v. Markovich, 19 Wn. App. 2d 157 (2021), review denied, 198 Wn.2d 1036 (2022).

While GR 14.1(c) directs that "Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions," the following list of unpublished cases is provided for the sole purpose of establishing that this is a well-settled legal issue:  State v. Winbush, 25 Wn. App. 2d 1028 (2023) (unpublished); State v. Darby, 24 Wn. App. 2d 1032 (2022) (unpublished), review denied, 1 Wn.3d 1004 (2023); State v. Liptrap, 22 Wn. App. 2d 1031 (2022) (unpublished); State v. Susnios, 22 Wn. App. 2d 1023 (unpublished), review denied, 200 Wn.2d 1015 (2022); State v. Kankam, 21 Wn. App. 2d 1069 (unpublished), review denied, 200 Wn.2d 1006 (2022); State v. Greenfield, 22 Wn. App. 2d 1013 (2022) (unpublished); State v. Boudrieau, 21 Wn. App. 2d 1038 (unpublished), review denied, 199 Wn.2d 1026 (2022); State v. Yaffee, 21 Wn. App. 2d 1011 (2022) (unpublished); State v. Stach, 20 Wn. App 2d 1055 (unpublished), review denied, 199 Wn.2d 1019 (2022); State v. Carmona-Cruz, 20 Wn. App. 2d 1035 (2021) (unpublished), review denied, No. 100757-4 (Wash. Aug. 30, 2022); State v. Saidy-Khan, 20 Wn. App. 2d 1023 (2021) (unpublished); State v. McDonald, 20 Wn. App. 2d 1013 (2021) (unpublished); State v. Hernandez Aguilar, 19 Wn. App. 2d 1054 (2021) (unpublished), review denied, 199 Wn.2d 1007 (2022); State v. Purdy, 19 Wn. App. 2d 1023 (2021) (unpublished), review denied, 198 Wn.2d 1043 (2022); State v. Allingham, 18 Wn. App. 2d 1058 (2021) (unpublished); State v. Baker, 18 Wn. App. 2d 1041 (2021) (unpublished), review denied, 198 Wn.2d 1033 (2022); State v. Bloom, 18 Wn. App. 2d 1031 (unpublished), review denied, 198 Wn.2d 1031 (2021); State v. Snyder, 18 Wn. App. 2d 1032 (unpublished), review denied, 198 Wn.2d 1030 (2021); State v. Maldonado-Alonzo, 17 Wn. App. 2d 1066 (2021) (unpublished); State v. Tatum, 17 Wn. App. 2d 1036 (2021) (unpublished); State v. Schopf, 17 Wn. App. 2d 1016 (2021) (unpublished); State v. Salas, 17 Wn. App. 2d 1005 (unpublished), review denied, 198 Wn.2d 1016 (2021); State v. Salih, 17 Wn. App. 2d 1001 (2021) (unpublished); State v. Spieker, 16 Wn. App. 2d 1080 (2021) (unpublished); State v. Anderson, 16 Wn. App. 2d 1040 (2021) (unpublished), review denied, 197 Wn.2d 1019 (2021); State v. Anthony, 16 Wn. App. 2d, 1010 (2021) (unpublished); State v. Van Brackle, 15 Wn. App. 2d 1031 (2020) (unpublished); State v. Reyes-Rojas, 15 Wn. App. 2d 1023 (2020) (unpublished); State v. Okler, 14 Wn. App. 2d 1060 (2020) (unpublished), review denied, 196 Wn.2d 1044 (2021); State v. Elliott, 14 Wn. App. 2d 1056 (2020) (unpublished); State v. Rose, 13 Wn. App. 2d 1107 (2020) (unpublished); State v. Smith, 13 Wn. App. 2d 1107 (2020) (unpublished); State v. Newbern, 13 Wn. App. 2d 1070 (2020) (unpublished); State v. Gonsalves, 13 Wn. App. 2d 1019 (2020) (unpublished).

that directly contradicts the one presented by the deputy prosecutor handling the matter in the trial court. Given that fact, and the wealth of case law on the issue, the State's arguments here are not well taken.

Finally, Hixson properly notes in briefing that while the amendment to RCW 9.94A.703(2)(d) that eliminated supervision fees for DOC community custody was not in effect at the time of Hixson's sentencing in March 2022, it applies now as "amendments to statutes imposing costs on criminal defendants apply to cases on appeal." State v. Wemhoff, 24 Wn. App. 2d 198, 199, 519 P.3d 297 (2022). The State's position before this court is wholly unavailing in light of the clear record from the trial court, the bountiful and recent jurisprudence on this precise question, and the legislative amendment which directly applies to Hixson's case.

III.    Imposition of VPA on Indigent Offenders

Hixson's final assignment of error goes to the imposition of the $500 VPA, which, he asserts, violates the excessive fines clause of our state constitution because he is indigent. While the constitutionality of this assessment has long been settled, our legislature recently amended RCW 7.68.035 to prohibit trial courts from imposing the VPA on indigent defendants.

Pursuant to the new provision of RCW 7.68.035(4), effective July 1, 2023, trial courts shall not impose the VPA on defendants who are found indigent at the time of sentencing. LAWS OF 2023, ch. 449, § 1. Though this change took effect after Hixson's sentencing, the new provision applies here as this case is on direct appeal. State v. Ellis, No. 56984-1-II, slip op. at 12 (Wash. Ct. App. June 13, 2023)

- 11 -

www.courts.wa.gov/opinions/pdf/D2%2056984-1-II%20Published%20Opinion.pdf (citing State v. Ramirez, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018)).

We reverse and remand for correction of the J&S as to the finding under RCW 46.20.285(4) and to strike the language that imposes both the community custody supervision fees and VPA.[9]

WE CONCUR:

---

[9] Again, it would behoove the State, if it continues to assume the responsibility of preparing and presenting the judgment and sentence to the court, to update its standardized forms to reflect the will of our legislature as demonstrated by the statutory amendment removing community custody supervision fees. This would not only be consistent with interests of judicial economy for both the trial and appellate courts, but would also relieve appellate prosecutors and defenders of the burden of having to continually relitigate a well-settled issue.